Francis vs. Evans, Assignee, etc.

FRANCIS, Appellant, vs. EVANS, Assignee, etc., Respondent.

*April 14 — June, 1, 1887.*

BANKS AND BANKING: EQUITY: VOLUNTARY ASSIGNMENT. *(1) Money collected for deed a trust fund: Enforcing payment out of assets in hands of assignee. (2) Filing claim and receiving dividend not an estoppel. (3) Parties.*

1. Where F. entrusted H., who was a banker, with a deed of land, directing him to collect the purchase money and deliver the deed to R., the grantee, on payment thereof, and immediately remit the money to himself, and H. delivered the deed on receiving a small amount in money and the balance in his own certificates of deposit, previously issued to R. and others, and on the same day closed his business, and, within a few days, made an assignment for the benefit of his creditors, without having remitted the purchase money to F., *held*, that H. was guilty of a fraud in receiving certificates in place of money; that the assets in the hands of his assignee were subject to an equitable trust in favor of F. for the whole amount of such purchase money, although it could not be traced to any specific property; and that he could enforce full payment thereof in an action against the assignee alone. TAYLOR and CASSODAY, JJ., dissent.

2. A creditor who has an equitable lien upon the assets of a banker in the hands of his assignee for the benefit of creditors, for the amount of moneys collected for him by such banker and converted and used in the banking business, does not estop himself from enforcing his lien by action against the assignee, by his filing his claim

as a creditor to that amount, when he supposed the assets would be sufficient to pay all claims in full, and by afterwards receiving a dividend, though he then knew there would be a deficiency.

3. In an action to enforce such trust, it is not necessary to join the creditors of the assignor as defendants with the assignee.

APPEAL from the Circuit Court for *Grant* County.

This is an action against the assignee of an insolvent banker to recover the amount collected by such banker for the plaintiff as the purchase money of land, and to enforce an equitable trust for the amount upon the assets in the hands of such assignee. There was a judgment dismissing the complaint, from which plaintiff appeals. The facts are stated in the opinion.

The cause was submitted for the appellant upon the briefs of *J. W. Murphy, A. W. & W. E. Bell,* and *Bushnell & Watkins.* They referred to their brief in the case of *McLeod v. Evans,* 66 Wis. 402, in which their arguments upon a very similar state of facts are quite fully stated. It seems unnecessary to repeat them here. By way of reply to defendant's brief, they further argued that the complaint shows that the plaintiff does not claim as an ordinary creditor of the assignor, but that the lattter received the plaintiff's money in a fiduciary character and disposed of it in such a way as to impress his estate with a trust for the whole amount in favor of the plaintiff. *Thompson v. Gloucester C. S. Inst.* 6 Cent. Rep. (N. J.) 328; 8 Atl. Rep. 97; *Sweeny v. Easter,* 1 Wall. 166; *Hoffman v. First Nat. Bk.* 46 N. J. Law, 604; *Hackett v. Reynolds,* 5 Cent. Rep. 521; *Hook v. Pratt,* 78 N. Y. 371; Morse on Banking, 420; 2 Parsons on Bills, 21, 23, 28. In receiving the certificates of deposit as payment the assignor paid his own debts to that amount, and consequently benefited his estate and his other creditors as much as if he had at that time received the money and paid it out on his debts, and the plaintiff's equities are the same as they would have been in that case.

His ordinary creditors had no claim except against his own property.

For the respondent the cause was submitted on the brief of *Carter & Cleary.* They contended, among other things, that this case was not ruled by the decision in *McLeod v. Evans,* because there the amount collected by the assignor benefited his estate, but that cannot be presumed in this case, since it does not appear that the certificates received by him were represented ·by anything of value remaining in his hands or in the hands of the assignee. It stands the same as if he had lost, gambled away or destroyed the money. This is a contest between the plaintiff and the creditors of the assignor, and he can recover, if at all, only to the extent that they have received benefit from his money. The assignor being insolvent, the amount received by him for plaintiff is the same as lost, unless shown to have passed into the hands of his assignee. If it reduced his debts, it can have benefited his creditors only to the *percentage* it added to their dividends. He cannot be entitled to the whole of the money which passed into the hands of the assignee, since there are others similarly situated, how many the court cannot know.

COLE, C. J. The facts upon which the questions of law in this case arise are, in brief, these: The plaintiff, living in Dakota territory, bargained with one Rundell, of Grant county, Wisconsin, to sell him his Dakota farm for $2,000. He sent a deed of his farm, with an abstract of title, to Isaac Hodges, a banker doing business in Platteville, with instructions to collect from Rundell the $2,000, and on payment of the same to deliver the deed and abstract, and remit the money immediately to him in Dakota. The deed lay a few days in Hodges' bank, when Rundell learned it was there and came to Platteville on the 8th of February, 1884, to get it. He reached the bank about 1 o'clock P. M.,

when Hodges delivered to him the deed, and Rundell paid him the $2,000 consideration by giving him $400 in cash, represented by four $100 bills, and certificates of deposit which Hodges had previously issued to him and others for the balance. Hodges continued to do business that day, and at night his bank closed. Subsequently he made an assignment for the benefit of his creditors. The amount of cash which came to the hands of the defendant assignee was about $500, but did not include any $100 bill. Hodges' estate is largely insolvent, and the main question to be decided is, does the plaintiff stand upon the same ground as the other creditors of Hodges, and must he share ratably with them in the assets? It is claimed by his counsel that the estate in the hands of the assignee is impressed with a trust in his favor, and, upon the facts, that he is entitled to payment in full, as it is conceded that the assignee has sufficient to pay him his debt. On the other hand, it is contended that the estate in the hands of the defendant is not subject to any trust or equitable charge in favor of the plaintiff, but that he stands precisely on the same footing as the other creditors of Hodges.

This question is hardly an open one in this court, for there is no fact in the case which can distinguish it in principle from that of *McLeod v. Evans*, 66 Wis. 401. So, unless that decision is to be overruled, it disposes of this case. The plaintiff there had left with this same banker (Hodges) for collection, a draft on a New York bank, which Hodges undertook to collect for him. He did not in fact send the draft to New York for collection, but forwarded it to his banking correspondent in Chicago, and received credit for the amount in his account with that bank. Subsequently he drew upon the Chicago bank until this fund was exhausted. Before payment to the plaintiff there, he made the assignment which figures here. Of course, the assignee received the same amount of money named in the testi-

mony of this case, but he collected other assets, or converted them into money, so he had sufficient funds in his hands to meet the plaintiff's claim.   This court held that presumably Hodges obtained money on his Chicago drafts which he used in the transaction of his business, or applied to the payment of his debts; that, in either event, the trust property found its way into the estate which was conveyed to the assignee, increasing the assets in his hands, and benefiting such estate; and that such estate was impressed with a trust in favor of the plaintiff for the full amount of his claim.   Confessedly, so long as the trust property can be traced or identified either in its original or substituted form, the rightful owner may claim it.   But it was objected in the *McLeod Case*, as it is here, that it is impossible to trace or identify the proceeds of the trust property in any specific property which has come to the possession of the assignee.   But, in order to enforce the trust, it was held not to be necessary to trace the trust fund into some specific property; but, where it could be traced into the estate of the defaulting agent or trustee which had the benefit of it, this was sufficient.   In addition to the cases cited in the *McLeod Case* to support the doctrine there laid down are *Third Nat. Bank v. Stillwater Gas Co.* 36 Minn. 75; *S. C.* 26 Am. Law Reg. 254; *Thompson v. Gloucester City Sav. Inst.* 8 Atl. Rep. (N. J.) 97,— which, in effect, enforce the same rule as to constructive trusts.

In the former case one R. W. Kerr, by fraud and deceit, obtained from respondent a loan of $3,500; the amount being placed to his credit, and subject to his draft or check, in respondent's bank.   Kerr afterwards drew out the money, and placed it in the possession and control of E. W. Kerr as his agent, by causing it to be deposited in a bank in Stillwater to the credit and subject to the check of E. W. Kerr. Subsequently the appellant, by fraud and false pretenses, induced E. W. Kerr, as agent of R. W. Kerr, to pay over the

money to it (the appellant), which he did by check upon the Stillwater bank. Subsequently R. W. Kerr died insolvent. An action was brought to impress this money in the hands of the appellant with a trust in favor of the respondent, and to recover the same, and the action was sustained.

In the *Thompson Case* a national bank sent to a savings bank two notes and a draft for collection. The latter collected the draft and one of the notes, and sent the other note for collection to another bank. The collections were not kept separate by the savings bank, or in any way distinguished from its other funds. Soon afterwards the savings bank failed, and a receiver was appointed to settle its affairs, who claimed that the national bank was only entitled to share *pro rata* in the assets. The court held that the relation between the two banks was that of principal and agent, and that the national bank was entitled to be paid the full amount collected on the note and draft, with interest, and might look to the other bank for the note which the savings bank had sent it, if still in its possession.

In the case at bar it would seem that the trust should be enforced as to the $400, even though the identical $100 bills which were paid Hodges by Rundell did not come to the possession of the assignee. But $500 in cash came to his possession, and we must presume that the particular four $100 bills were paid out by Hodges on the afternoon of his failure, instead of this $500 fund, either to discharge *bona fide* debts or purchase property which became a part of his assets. As to the $1,600 which was paid in certificates of deposit, there may be more room for doubt. We remark that it was a gross breach of duty on the part of Hodges to deliver the deed to the purchaser without being paid in money. His instructions upon this point were clear and positive not to part with the deed until the consideration was paid. When the certificates were issued, it does

not appear; but they were doubtless given for money received which had been used in his business, and with which he had purchased property. The learned counsel for the respondent insists that it would be unjust to the creditors to treat these certificates as so much money paid by Rundell on the day the bank closed, because it does not appear that the estate conveyed to the assignee was benefited by their redemption. But, as we have said, these certificates doubtless represented money which Hodges had received and used in his business, and it is fair to assume that such money contributed to the accumulation of his assets; for whatever assets he acquired were the fruits of his business; and, while it may be impossible to trace the money which the certificates represented into any particular property, we must presume it had found its way into the mass of the estate which was benefited by it. We cannot presume that it was lost and squandered in foolish speculations, as counsel suggests, in the absence of all proof tending to establish that fact. We must presume that the proceeds of the certificates had gone into the mass of the estate of the insolvent. It certainly must be admitted that their redemption diminished his indebtedness *pro tanto.*

There is an instructive note by Judge PIERCE to the case of *Third Nat. Bank v. Stillwater Gas Co.* in the American Law Register, *supra*, where many cases on this branch of the law are commented upon by the writer; and we think it is a fair result of the authorities, under the circumstances of this case, to say that the general assets in the hands of the defendant are impressed with a trust in favor of the plaintiff to the extent of $2,000, which Hodges wrongfully misappropriated. It was a clear fraud on his part to receive these certificates, instead of claiming the money, on the eve of his failure. He violated his instructions in receiving them, and in delivering up the deed.

It appears that the plaintiff was listed as one of the

creditors of Hodges; that he proved up his claim, and has received from the assignee a six per cent. dividend upon it. In the *McLeod Case* the plaintiff did the same thing; but it was held that he neither waived nor lost his right to insist upon his equitable lien by so doing. When the plaintiff proved his claim, he doubtless acted under the belief that the assets of Hodges were sufficient to pay every dollar of his indebtedness. But the court finds that, when the attorneys of the plaintiff received the dividend for him, it was generally known that the assets would be insufficient to pay the debts in full. But as was said in the *McLeod Case*, the plaintiff has only received a portion that was due him. The rights of no one have been prejudiced by this. No one has changed his position, or lost any advantage which the law gave him in consequence of what the plaintiff did in the matter, and there are no facts upon which a waiver or equitable estoppel can be fairly predicated.

The objection that there was a defect of parties defendant is not seriously insisted upon. We suppose the assignee represented the creditors of the estate for the purposes of the litigation, and to settle the rights of the plaintiff to his equitable claim on the assets in the assignee's hands.

It follows from these views that the judgment of the circuit court must be reversed, and the cause remanded with directions to render judgment in conformity with this decision.

TAYLOR and CASSODAY, JJ. The $400 belonging to the plaintiff was paid in cash to Hodges, but was not traceable to the hands of the assignee. Presumably, it was used in paying debts or otherwise in the business. The $1,600 was not paid in money, but by the surrender or cancellation of that amount of certificates of deposit which had formerly been issued by Hodges. This operated as a cancellation or payment of so much of Hodges' debts. Such being the

facts, the case is not distinguishable in principle from the ruling of the majority of the court in *McLeod v. Evans*, 66 Wis. 401. That rule is, in effect, that debts created by an insolvent debtor's misappropriation of funds received by him in a fiduciary capacity, have a preference over his other creditors. Where such insolvent debtor, or his assignee, still holds such funds, or where such debtor is perfectly solvent, the rule might not work any injustice to his other creditors. But, where he is insolvent, it seems to us it will necessarily work great injustice to such other creditors. This will be manifest by simply supposing that an insolvent debtor, D., has only $1,000 of property, but is indebted to the amount of $2,000, one-half of which is due to A., and the other half to B. In this condition of things, D.'s property can only pay fifty per cent. of his debts. By such distribution, A. and B. would each be equitably entitled to $500. Now, suppose D., while in that condition, collects $1,000 for F.; but instead of remitting to him the money, as he should, he uses it in paying his debt in full to A. By so doing, D. has not increased his assets a penny, nor diminished his aggregate indebtedness a penny. The only difference is that he now owes $1,000 each to B. and F., whereas he previously did owe $1,000 each to A. and B. Now, if F. is to have preference over B., then his claim will absorb the entire amount of D.'s property, leaving nothing whatever for B. In other words, the $500 to which B. was equitably entitled from his insolvent debtor, upon a fair distribution of the estate, has, without any fault of his, been paid to another, merely in consequence of the wrongful act of the debtor. This, as it seems to us, is a misapplication of a well-established equitable rule, as indicated in the dissenting opinion in *McLeod v. Evans*, *supra*. That rule, as we understand, was never based upon any supposed right of preference of one creditor over another, as sometimes provided by statute; but upon the supposed equitable right

of the person whose property has been wrongfully converted to trace and retake his own property; and, when its identity has been lost by being mixed with other property or funds, then to retake its equivalent from the property or funds it has so enriched, and to the extent of such enrichment. In the case supposed, there is not only a loss of identity, but an entire absence of any mixture or enrichment of any funds or property remaining in the hands of the debtor, as the wrongfully converted property had passed entirely from D. to A., and, if followed at all, would have to be followed into the hands of A.

The learned justice writing the opinion in the case of *Third Nat. Bank v. Stillwater Gas Co.*, referred to by the chief justice, *supra*, cites a class of cases, including *McLeod v. Evans*, " as illustrating the extent to which courts of equity have carried this principle," there and here applied, and then adds: " Some cases go so far as to hold that the trust character still adheres to money, even though it cannot be traced into any specific property. In the case at bar, *it is not necessary to go to any such length* in order to charge this money in the hands of appellant with a trust in favor of respondent." It seems to us that the decision in *McLeod v. Evans* goes further than any other well-considered adjudication of an appellate court. While we bow to the rule thus affirmed by the majority of the court as a binding authority, which must be followed while it remains, yet we do not concede the logic of the reasons given, nor the application of the authorities cited in support of it.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in conformity with this decision.