Bowers, Respondent, vs. Evans, Assignee, etc., Appellant.

*February 6 — February 28, 1888.*

*Equity: Banks and banking: Voluntary assignment: Trust fund: Paramount right to payment.*

Bonds deposited with a banker for safe-keeping were by him disposed of, and the proceeds went to increase the assets of the bank which were shortly afterwards assigned by him for the benefit of creditors. *Held,* that the owner of the bonds had a paramount right to be first paid in full out of such assets. *McLeod v. Evans,* 66 Wis. 401, and *Francis v. Evans,* 69 id. 115, followed.

APPEAL from the Circuit Court for *Grant* County.

This was an action by *Maggie Bowers* against *Jonathan H. Evans,* assignee of Isaac Hodges, to recover the proceeds of certain bonds sold by said assignor. The court made the following findings of facts and conclusions of law:

"1. On the —— day of October, 1882, Isaac Hodges, the assignor of the defendant, was a banker and doing business as such at Platteville, Wisconsin, and on that day the plaintiff deposited with him, for safe-keeping and not otherwise, six United States government bonds, each of the denomination of $500, and bearing interest at the rate of four per cent. per annum, which said bonds were negotiable by delivery. 2. That on August 1, 1883, said Hodges, in the course of his regular business, deposited said bonds with the National Bank of Galena, Illinois, as collateral security on his note for $7,000 to said bank, with other collaterals. 3. On January ——, 1884, the plaintiff directed said Hodges to sell said bonds and immediately remit the proceeds thereof to her at San Buena Ventura, California, where she then resided. 4. On February 7, 1884, said Hodges directed said bank to sell said bonds and apply the proceeds thereof on his said note to it, which was not then due; and on February 11, 1884, said bank notified said

Hodges that said bonds were sold for $3,710.90, and the proceeds indorsed on said note.    5. On February 8, 1884, said Hodges closed his doors as a banker, and on February 11, 1884, assigned all his property to the defendant for the benefit of his creditors, and said defendant thereupon immediately accepted of the trust as such assignee, and took possession of the estate assigned to him, and now has money and property in his hands as such assignee to the value of at least $20,000.    6. That on May 6, 1884, the plaintiff made proof of a claim against said I. Hodges, based upon the facts aforesaid, for the sum of $3,710.90, and duly filed the same; and on June 4, 1884, the plaintiff received a six per cent. dividend thereon, amounting to $222.65, from said assignee.    7. That in making such assignment said Hodges stated the value of his property and assets by him so assigned, under oath, at the sum of $226,000, and in like manner stated the amount of his liabilities at $164,554.11, and in like manner listed the plaintiff as one of his creditors in the said sum of $3,710.91, growing out of the facts aforesaid, but that said Hodges was then in fact largely insolvent, as the plaintiff discovered after filing her said claim.    8. And as conclusions of law, the court finds that the plaintiff is entitled to judgment against the defendant for the said sum of $3,710.91, with interest from February 11, 1884, less the said sum of $222.65, paid June 4, 1884, together with the costs of the action, and that the same be paid in out of the estate of said Hodges so in the hands of the defendant; and judgment is ordered accordingly."

From the judgment entered accordingly the defendant appeals.

For the appellant there was a brief by *Carter & Cleary*, and oral argument by *Mr. W. E. Carter.*

For the respondent there was a brief by *J. W. Murphy, A. W. & W. E. Bell*, and *Bushnell & Watkins*, and oral argument by *Mr. A. W. Bell* and *Mr. A. R. Bushnell.*

COLE, C. J. This case is clearly ruled by the decision in *McLeod v. Evans*, 66 Wis. 401, and *Francis v. Evans*, 69 Wis. 115, unless those cases are to be overruled. A majority of the court are not disposed to disturb them or modify the doctrine laid down in them. The equities of the plaintiff to a preference over the general creditors are certainly as strong, if not superior to the equities of the plaintiffs in those cases. Here the plaintiff left her United States bonds with Hodges for *safe-keeping*, in October, 1882. In August, 1883, Hodges, in the course of his regular business as banker, deposited the bonds with a Galena bank, as collateral security for the payment of his note then made, of $7,000. The proceeds of the Hodges note, the cashier, Griswold, says, were put into his general banking business. On February 6th or 7th Hodges directed the Galena bank to sell the bonds and apply the proceeds on his note, which had been renewed and was not then due. The Galena bank informed Hodges that they had sold the bonds and applied the proceeds as directed. The Hodges note is indorsed February 11, 1884, with a payment of $3,710.90, the proceeds of the bonds. Hodges' bank closed on the 8th of February, and he made an assignment of all his property for the benefit of his creditors on the 11th. It appears that some time in January, 1884, the plaintiff directed Hodges to sell her bonds and immediately remit the proceeds to her in California, where she resided. It is not pretended that Hodges assumed to act, in directing the bonds to be sold, under any instructions given him by the plaintiff. He simply misappropriated or wrongfully converted the bonds to his own use, without the least color of right or authority. They were left with him for safe-keeping merely, and he sold or pledged them to raise money to put into his banking business. This is the fair inference from the testimony. It is true, Griswold, on being subsequently called, qualified the statement that the money borrowed of the Galena bank on

the Hodges note was put by Hodges in "his general bank-ing business," but we are inclined to take the first statement as correct. It is more probable that the money was thus used.

The question then is, Must the plaintiff, whose property has thus been wrongfully misapplied, stand upon the same foot-ing as the general creditors as to the assets assigned? We think not. We say, as we did in the *McLeod Case*, that it is an irresistible conclusion from the facts that the proceeds of these bonds found their way into the Hodges estate and went to increase the assets of the bank which were assigned. It seems inequitable that the general creditors should profit by, or have the benefit of, the fraud committed by the as-signor in respect to these bonds. For Hodges never owned them; they were never a part of his estate by right, but, by a gross violation of trust, amounting to a crime, he mixed this trust property with his own, and the assignee seeks to hold it for the benefit of all the creditors. The plaintiff has a paramount right to be first paid out of the assets. This is the doctrine of the cases decided by the court, which we see no sufficient reason for changing. It was not my purpose, at this time, to enter upon a discus-sion of the principles upon which these cases rest. Enough is said in the opinions to indicate our views upon that sub-ject. I shall make but one further remark. Among the authorities cited to sustain the decision in the *McLeod Case* was *People v. City Bank*, 96 N. Y. 32, which, as reported, would seem to be in point. In that case the court says that the object of Sartwell, Hough & Ford, in drawing and de-positing their checks with the bank, was to provide a fund for the payment of the specific notes mentioned, and the engagement of the bank was thus to apply the fund. "Thus a trust was created, the violation of which consti-tuted a fraud, by which the bank could not profit, and to the benefit of which the receiver is not entitled. . . .

The checks were impressed with a trust, and no change of them into any other shape could divest it so as to give the bank or its receiver any different or more valid claim in respect to them than the bank had before their conversion." The decision of the same court in *Cavin v. Gleason*, 105 N. Y. 256, would seem to be in direct conflict with that in the *City Bank Case*. The court, however, say, in *Cavin v. Gleason*, that the case of *People v. City Bank* seems to have been misunderstood; that it was not claimed in the latter case that the proceeds of the checks of Sartwell, Hough & Co., the petitioners, had not gone into the general funds of the bank, or that they had not passed in some form to the receiver. In fact, what the case does show upon that point is that these checks were marked paid, and the amounts were deducted from the deposits of the drawers in the bank. But the notes themselves, which the checks were intended to pay, were not owned by the bank, but had been previously sold and the avails used in its business, as we infer. These are the facts, as we understand them. We shall not attempt to reconcile these cases in New York. It is sufficient to say that a majority of this court adhere to the decisions which we have made and which clearly dispose of every point relied on in the case at bar for a reversal of the judgment of the court below.

TAYLOR and CASSODAY, JJ. While approving of the "progressive" or "modern rule" of equity, as affirmed in *Re Hallett's Estate*, 13 Ch. Div. 696, we were forced to dissent from the conclusions of the majority of this court in *McLeod v. Evans*, 66 Wis. 413, for the reasons there given, to the effect that, in our judgment, that decision was a departure from a well-established rule of equity, and not supported by any well-considered adjudication. It is true that some things were said in *People v. City Bank*, 96 N. Y. 32, and *Peak v. Ellicott*, 30 Kan. 156, cited in the majority opinion,

which seemed to support such new departure, but the report of those cases left the facts upon which each turned so obscure that we were constrained to believe that the trust fund was still on hand and either capable of identification or traceable into a still present existing fund, and not, as in these *Evans Cases*, previously paid out on such trustees' or agents' indebtedness; but if otherwise, they ought not to be followed. In the case of *Francis v. Evans*, 69 Wis. 115, we attempted to expose what we regarded as a fallacy, in assuming that, if an insolvent debtor used funds which he held in trust, or in any fiduciary capacity, in payment of his debts, he thereby benefited his estate, when, as a matter of fact, the wrongful conversion of the money so held in trust created a new indebtedness of precisely the same amount as the one paid; and hence the result must always be that by such misappropriation the insolvent's volume of indebtedness is not diminished a penny, nor his assets increased a penny. We there stated the equitable rule thus: "That rule, as we understand, was never based upon any supposed right of preference of one creditor over another, as sometimes provided by statute, but upon the supposed equitable right of the person whose property has been wrongfully converted to trace and retake his own property; and, when its identity has been lost by being mixed with other funds, then to retake its equivalent from the property or funds it has so enriched, and to the extent of such enrichment." Soon after the decision in that case, there appeared two decisions of courts of conceded ability upon the very questions here involved, and holding the true rule to be substantially as stated above. One was by the court of appeals of New York, in *Cavin v. Gleason*, 105 N. Y. 256; and the other by the supreme court of Pennsylvania in the *Appeal of Hopkins*, 9 Atl. Rep. (Pa.), 867. In the New York case the authorities are reviewed to some extent by Mr. Justice ANDREWS, and *People v. City Bank* is explained

as not involving the question thus assumed to have been decided; and saying, that: "We know of no authority for such a contention." The opinion in that case, as well as the conclusions reached by the several judges in *Re Hallett's Estate, supra*, are so clearly in harmony with our views, that we refrain from adding anything; and we have written this merely to relieve ourselves from the responsibility of the decision in this case.

*By the Court.*— The judgment of the circuit court is affirmed.