[Argued April 17; decided July 5, 1894.]

## FERCHEN v. ARNDT.

[ 37 Pac. 161.]

TRUST FUNDS — INSOLVENT ESTATES — PREFERENCE AMONG CREDITORS — RIGHT OF CESTUI QUE TRUST TO FOLLOW TRUST FUND.— In order to impress upon the estate of an insolvent a lien for trust funds, it must appear that the trust fund is still on hand, or that it has been used to increase the property or fund upon which the lien is claimed. When the trust fund has been dissipated by the trustee, and forms no part of his estate, the *cestui que trust* has no longer any remedy in equity to fix a charge upon the estate of the trustee, but must come in and share with the general creditors.*

APPEAL from Clatsop: THOS. A. MCBRIDE, Judge.

This is a suit to establish a preference and a lien upon the assets of the partnership of Arndt & Ferchen, in the hands of B. W. Robinson as receiver, for certain moneys alleged to have been received in trust by said firm. The facts are substantially these: The plaintiff and defendant were partners engaged in the foundry business under the firm name of Arndt & Ferchen, and, not being able to agree in regard to the management of the business, the plaintiff instituted a suit praying for an accounting, and for a dissolution of the partnership, and that in the interim the property of the partnership be turned over to a receiver, who should manage the same, subject to the orders of the

* The question here considered was similarly decided by BELLINGER, D. J., in *Multnomah County* v. *Oregon National Bank,* (June 1, 1894,) 61 Fed. 912, and an instructive article entitled "Following Trust Funds Under the So-called Modern Doctrine of Equity," appeared in July, 1894, in 39 Cent. Law Jour. 4. A careful review of the authorities on this subject, properly classified and arranged, is appended to the case of *Union National Bank* v. *Goetz,* 32 Am. St. Rep. 125, where a number of previous cases in the same series are cited. See also *Wetherell* v. *O'Brien,* 33 Am. St. Rep. 221; *Mutual Accident Association* v. *Jacobs,* 33 Am. St. Rep. 302; and *Holmes* v. *Gilman,* 34 Am. St. Rep. 463, 20 L. R. A. 566. The question of the right to follow trust funds that have been wrongfully converted is thoroughly considered in the case of *Philadelphia National Bank* v. *Dowd, Receiver,* reported in 2 L. R. A. 480, with a copious note on the rights of a *cestui que trust* to commingled trust funds both where such funds can and cannot be identified, or traced into some specific property.— REPORTER.

26 OR.—16.

court.  The receiver having been appointed, took charge
of the property and business of the firm, and, after man-
aging it several months, he was directed by the court to
sell the property of the partnership in his hands, and turn
into court the proceeds of such sale, together with such
collections as he might make of partnership accounts.
Under this order about two thousand dollars was paid into
court for distribution among the creditors of the firm.  In
the mean time the E. W. Bliss Company was permitted by
the court to intervene in the suit, whereupon it filed its
petition praying for the allowance of a claim against the
partnership for the sum of two thousand one hundred and
fourteen dollars, together with interest thereon from July
fifteenth, eighteen hundred and ninety-two; that it be de-
creed to have a preferred lien on all assets of the partner-
ship for said sum, and that the receiver be directed to pay
the same to the petitioner.  The facts upon which the in-
terventor bases its claim are, substantially, that the firm
of Arndt & Ferchen had represented the Bliss Company as
its agents in the sale of its goods on commission; that
accounts were rendered from time to time to said com-
pany, but that, without its knowledge, it had been the cus-
tom of the firm to mingle the sums received from sales
made for such company with other moneys of the firm;
that the moneys so received were deposited in the bank to
the credit of such partnership, and that the firm "checked
against it to pay the running expenses of the partnership,
to purchase new machinery, to purchase merchandise after-
wards sold by the partnership, to pay the salaries and
wages of employés,   *   *   *   and that the moneys of your
petitioner so received by said Arndt & Ferchen have been
so mingled with the funds of said Arndt & Ferchen that
it is impossible to follow them into any specific property."
The petition was attacked by demurrer, on the ground
that it did not state facts sufficient to constitute a cause of

suit, which demurrer was overruled, the court holding
that the intervertor was entitled to have any specific prop-
erty or fund of the partnership into which it could trace
its money impressed with a lien in its favor.   The court
then referred the case to C. E. Runyon, Esq., for the pur-
pose of ascertaining whether the firm had received any
money from the sale of the goods or wares of the com-
pany as its factor, and, if so, what disposition was made
of it.   Thereafter the receiver filed an answer denying
that the firm of Arndt & Ferchen, since the year eighteen
hundred and eighty-four, or at any time, has been em-
ployed by the petitioner as its factor, or sold any goods
or wares for or on its account, etc.   This answer was
deemed insufficient to constitute a defense, and no other
answer being interposed, and the interventor having failed
to avail itself of the opportunity afforded by the court to
show by evidence that its money was in the partnership
fund, the court proceeded to pass upon the question raised
by the petition, and held that the amount claimed therein
should be allowed, but denied the preference sought by
the petitioner.   From this decree the Bliss Company has
brought this appeal.

                                        AFFIRMED.

Mr. Wallace McCamant (Mr. Zera Snow on the brief), for
Appellant.

The court erred in holding that the equitable lien of a
principal, whose funds have been misappropriated, is en-
forceable only against the specific property into which the
agent has converted it.   We do not deny that in the early
days of equity jurisprudence the rule was as announced by
the court above.   A trust estate could not be invested by
the trustee in property for the benefit of the trustee so as
to bar the cestui que trust of his·right to his property, but
the cestui que trust could follow the money invested into

the property into which it had been invested, and for such purpose equity would give him a charge. The courts in administering the doctrine found that there were many cases where substantial justice was denied the owner of a trust fund, because of the skill of the trustee in mingling the trust property with his individual property so as to destroy its identity. Courts became sensible of the fact that a *cestui que trust* did not voluntarily create the relation of creditor and debtor between himself and his trustee, nor did a principal create that relation voluntarily with his agent. This was properly held to make a difference between the owner of a trust fund and the ordinary creditors of the trustee, and the courts began to see gradually that there was no injustice done the creditors of the trustee in requiring that trust funds should be replaced from the trustee's estate before his creditor's claims should be satisfied. It is evident that the enforcement of such a rule is fraught with no injury to the creditors of the trustee, inasmuch as the trust estate never belonged to the trustee, and no credit could properly be extended to him by virtue of his possession of it.

Thus came to be announced what we conceive to be the doctrine now well established that an agent or trustee who mingles the property of his principal with his individual property, does not thereby constitute the relation of creditor and debtor between himself and his principal, but make the trust fund a charge on all the assets of his estate.*

*Messrs. Fulton Bros.*, for Respondent.

While some courts have gone so far as to hold that under such circumstances as appear here a trust creditor has

---

* No authorities are included in the briefs in this case as everything cited has been included in the briefs in the *Muhlenberg* case immediately following this which was argued at the same time.— REPORTER.

a lien upon the entire estate of the debtor, the clear weight
of authority is that it is incumbent upon the party assert-
ing the lien to trace the funds he seeks to have impressed
with a trust character into the possession of the insolvent
estate, either in their original form, or some specified
property or fund, and the burden of proof is upon such
claimant.   The authorities seemingly most relied on by
appellant's counsel are wholly unlike this in that in them
the fund could be pointed out that had been increased by
the trust fund.   In the present case the trust fund claimed
is larger than the entire estate.

The true rule is that in order to impress any property
with a trust, it must be shown (1) to be the property into
which the alleged trust fund was converted, and (2) that
such property has come into the possession of the insol-
vent estate.   The doctrine rests upon the proposition that
a man is entitled to his own whenever and wherever he
can identify it.   Therefore, if he finds his money in the
custody of another, the court will require that other to de-
liver it to him; or, if it be shown that the other has taken
the money and invested it in a certain article, or mingled
it with a particular fund of his own, for instance, put it
into a bag with other coin of his own, equity will impress
the particular article or all the money in the bag with a
lien in favor of the party wronged, to the extent of the
funds traced therein, but no further.   If, however, the
agent has used the funds in paying debts, or has squan-
dered them, or has so mingled them with his own that
they cannot be traced, there can be no trust lien.   The
ground upon which the doctrine rests giving a preference
lien or impressing certain property with a trust character,
is that the particular property is in fact not the property
of the debtor and ought not properly to be listed among
his assets; but when the trust fund has been dissipated, or
so mingled with the agent's estate that it cannot be again

identified, then the court cannot order its delivery to the owner, and he must take his chances with the general creditors.

Opinion by MR. CHIEF JUSTICE LORD.

The facts show that if the claim of the Bliss Company is preferred it will absorb the entire assets of the firm, leaving nothing for its other creditors. The case is rendered important by the nature of the question involved, and the number of other cases dependent upon its decision. Upon the admitted facts there is no pretense that the money derived from the sale of the interventor's goods forms any part of the fund now awaiting distribution at the hands of the court. It is conceded that the money so collected has been appropriated to the payment of debts, the purchase of stock, and the payment of the running expenses of the partnership, while the firm was conducting its business. But it is claimed that where an agent or trustee has wrongfully used or appropriated the property or funds of another, it creates an equitable charge upon his whole estate, or a preferred lien upon his assets. This is put on the ground that such estate is thereby increased, or that his assets would have been less but for the wrongful use or appropriation of the trust fund, and consequently that it cannot be supposed that such fund is wholly lost, but that it exists in a substituted form as a part of such estate or assets, although it cannot be pointed out or directly traced. That there may be cases to which such argument is applicable may be conceded, as where the trust fund has gone into and remains in the assets which are sought to be charged, but its force is not perceived where such fund is dissipated, or used in the payment of debts, or the expenses of business.

The equitable right to follow and retake from the pos-

session of a trustee property wrongfully appropriated by him, or from those in privity with him, who are not *bona fide* purchasers for value, so long as it can be traced, whether it remains in its original or in a substituted form, upon the ground that such property, in whatever form, is subject to the trust in favor of the owner, is well established. "Formerly," Mr. Justice BRADLEY says, "the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried": *Frelinghuysen* v. *Nugent*, 36 Fed. 238. Mr. Pomeroy says: "Equity regards the *cestui que trust*, in all instances except that last mentioned in favor of creditors, although without any legal title, and perhaps without any written evidence of interest, as the real owner, and entitled to all the rights and consequences of such ownership. * * * No change in the form of the trust property, effected by the trustee, will impede the rights of the beneficial owner to reach it and to compel its transfer, provided it can be identified as a distinct fund, and is not so mingled up with other moneys or property that it can no longer be specifically separated": 2 Pomeroy's Equity Jurisprudence, § 1058. This equitable doctrine is put upon the ground

that the real owner has the right to retake and reclaim his property, through all its transformations and forms, so long as it may be traced, whether its identity is preserved, or is merged into a mass of which it forms a part. To accomplish this end, when such trust property has been mingled into a mass of which it forms a part, but its identity is lost, equity affords relief by creating a charge or lien upon such mass for its ascertainable value. The right to such relief has its basis in the right of property and "simply asserts," as ANDREWS, J., says, "the right of the true owner to his own property": *Cavin* v. *Gleason*, 105 N. Y. 262, 11 N. E. 504. But whether such owner seeks to recover specific property, or to create a lien upon a mass or fund, he must trace such property, and show that it belongs to him, or that it has gone into and then remains in the mass which he seeks to impress with a lien or charge. In such cases the question to be determined always is whether the trust property or fund, or the proceeds thereof, is traceable into any specific property or fund. Before, therefore, one claiming to be a trust creditor can be entitled to a lien or preference over other creditors, he must make it appear that the fund or property of the debtor which he seeks to affect with such lien or preference includes the trust property, or the proceeds thereof.

"If it appears," said ANDREWS, J., "that trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with the equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property or funds, or proceeds of the trust property, entering into and constituting a part of the assets": *Cavin* v. *Gleason*, 105 N. Y. 262, 11

N. E. 504.    See also *Atkinson* v. *Rochester Printing Company*,
114 N. Y. 168, 21 N. E. 178; *Holmes* v. *Gilman*, 138 N. Y.
369, 34 Am. St. Rep. 463, 20 L. R. A. 566, 34 N. E. 205.
Hence, so long as the trust property can be traced and
followed into the hands of the debtor, his estate is subject
to the trust; but when it has been dissipated, and is no
longer traceable, there remains nothing to be the subject
of the trust, and the equitable right of the *cestui què trust*
to follow it fails.    "When trust money," said ALLEN, J.,
"becomes so mixed up with the trustee's individual funds
that it is impossible to trace and identify it as entering
into some specific property, the trust ceases.    The court
will go as far as it can in thus tracing and following trust
money; but when, as a matter of fact, it cannot be traced,
the equitable right of the *cestui que trust* to follow it fails":
*Little* v. *Chadwick*, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A.
570.    To the same effect are *Englar* v. *Offutt*, 70 Md. 78,
14 Am. St. Rep. 332, 16 Atl. 497; *Thompson's Appeal*, 22
Penn. St. 16; *Columbian Bank's Estate*, 147 Penn. St. 422,
23 Atl. 625-8; *Sherwood* v. *Milford Bank*, 94 Mich. 78, 53
N. W. 923; *National Bank* v. *Insurance Company*, 104 U. S. 54;
*Peters* v. *Bain*, 133 U. S. 670, 10 Sup. Ct. 354; *Union Na-
tional Bank* v. *Goetz*, 138 Ill. 127, 27 N. E. 907; *Goodell* v.
*Buck*, 67 Me. 514; Story's Equity Jurisprudence, §§ 1258,
1259; 1 Lewin on Trusts, 241.    From these authorities we
draw the conclusion that when the trust property has been
dissipated by the trustee, and forms no part of his estate,
the *cestui que trust* has no longer any remedy in equity to
fix a charge upon the estate of such trustee, but must come
in and share with the general creditors.    Nor do we find
anything in *Hallett's Estate*, 13 L. R. Ch. Div. 696, to the
contrary.    In that case JESSEL, M. R., said: "The guid-
ing principle is that a trustee cannot assert a title of his
own to trust property.    If he destroys a trust fund by dis-

sipating it altogether, there remains nothing to be the subject of the trust; but so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust."

Within the principles announced by these authorities the petitioner is not entitled to relief upon the facts stated in his petition, because it is not shown that the fund paid into the court by the receiver and awaiting distribution includes any of the proceeds of the trust property, or forms any part thereof. The admitted facts show that the moneys derived from the sale of the interventor's property has been used in the payment of debts, and otherwise dissipated, so that such moneys can no longer be traced, or shown to form any part of the fund which is sought to be charged with a preferred lien. The cases in conflict with this doctrine, and mainly relied upon in support of the interventor's contention, are *McLeod* v. *Evans*, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214; *Francis* v. *Evans*, 69 Wis. 115, 33 N. W. 93; *Bowers* v. *Evans*, 71 Wis. 133, 36 N. W. 629; *Davenport Plow Company* v. *Lamp*, 80 Iowa, 722, 20 Am. St. Rep. 442, 45 N. W. 1049; *Peak* v. *Elicott*, 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; *Harrison* v. *Smith*, 83 Mo. 216, 63 Am. Rep. 571: *Stoller* v. *Coates*, 88 Mo. 514; *Smith* v. *Combs*, 49 N. J. Eq. 420, 24 Atl. 1. It is enough to say that none of the Wisconsin cases received the consent of the entire court, and have recently been overruled in *Nonotuck Silk Company* v. *Flanders* (Wis.), 58 N. W. 383. The recent cases of *Slater* v. *Oriental Mills* (R. I.), 27 Atl. 443, and *Shields* v. *Thomas* (Miss.), 14 So. 84, ably review and criticise the doctrine of the cases cited in support of the contention for the interventor, and reach conclusions adverse to it. The distinction between funds remaining in the estate, and which go to swell it, and funds which have been dissipated, or used in the payments of debts, and do not remain in the estate, is made clear and applied.

To the argument that the relation of debtor and creditor does not exist between the trustee and *cestui que trust,* whose property he has wrongfully converted or appropriated, STINESS, J., in *Slater* v. *Oriental Mills,* 27 Atl. 443, says: "The fact that the *cestui que trust* has not entered into the relation of debtor and creditor with the trustee does not affect the question. So long as he seeks to recover what he can show to be his own he is in the position of an owner, but when he cannot do this, and seeks to recover payment out of the trustee's general estate, he is in the position of a creditor." Unless, therefore, he can show the specific property claimed is his, or that the trust fund has gone into, and forms a part of, the estate he seeks to charge, he is entitled to no lien or preference, but must prove his claim and share with the other creditors. It results from these views that there was no error, and the decree must be affirmed.

AFFIRMED.