[Decided December 31, 1894.]

## MUHLENBERG v. NORTHWEST LOAN AND TRUST COMPANY.

[S. C. 38 Pac. Rep. 932.]

FOLLOWING COMMINGLED TRUST FUNDS—INSOLVENT ESTATES.— In order to en-title a trust creditor to a preferred lien on the assets of an insolvent, it must appear that the identical fund is still among such assets, or that the property of the debtor sought to be subjected to the preference includes the trust fund or its proceeds. Where a trust fund deposited with a bank has been used in the business and indistinguishably confused with other moneys, the trustee is only a general creditor: *Ferchen* v. *Arndt,* 26 Or. 121, approved and followed.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

The Northwest Loan and Trust Company is a banking corporation which, prior to July twenty-sixth, eighteen

NOTE.—There is an interesting essay on the right of a beneficiary to follow trust funds, with special reference to the new doctrine that, though a trust fund cannot be traced into any particular asset of the insolvent estate of the trustee, yet it is sufficient to charge the estate in behalf of the beneficiary, in preference to the general creditors, to show that it had gone into and been used for the benefit of his estate, with numer-ous citations, by Jos. H. Taulane in 48 Alb. Law Jour. 384. The same question is con-sidered in *Little* v. *Chadwick,* 151 Mass. 109, 7 L. R. A. 570, with note; and in *First National Bank* v. *Hummel,* 8 L. R. A. 788, with note, 20 Am. St. Rep. 257, 14 Colo. 259. See also the note to *Ferchen* v. *Arndt,* 26 Or. 121.— REPORTER.

hundred and ninety-three, was doing business at the City of Portland, Oregon.    Like many others, it became embarrassed in the financial panic of eighteen hundred and ninety-three, and was forced, on July twenty-sixth, eighteen hundred and ninety-three, to suspend business.    On August second, eighteen hundred and ninety-three, the defendant J. L. Hartman was appointed receiver of said bank by the Circuit Court of the State of Oregon for Multnomah County, and qualified, and is still acting as such. This suit was brought by J. C. Muhlenberg to establish a preference or lien upon all the assets of the bank for certain moneys alleged to have been deposited with the bank in trust.    The facts out of which the claims arose are, in substance, these: Plaintiff and three other persons were jointly interested in a certain mortgage which matured in June, eighteen hundred and ninety-three, and each of them had at some time between January and June of that year sent to the bank with instructions to pay the mortgage his proportionate share of the money required to release said obligation.    The remittances were all made by drafts on either New York or San Francisco.    The Chase National Bank of New York was the eastern correspondent of the The Northwest Loan and Trust Company, and the trust company was indebted to it in the sum of fifty thousand dollars for moneys borrowed, and also had a running account with that bank for the credit of which it sent all eastern paper received by it and against which it drew its eastern exchange.    It had a like account with the Anglo-Californian Bank of San Francisco.    The trust company, upon receiving the New York drafts, sent the same to the Chase National Bank, which collected and credited the same to the trust company's account.    The San Francisco draft was sent to the Anglo-Californian Bank, and by it collected and credited to the trust company's account. Immediately on the bank's suspension, the Chase National

Bank applied the balance standing to the credit of The Northwest Loan and Trust Company on its books in part payment of its indebtedness of fifty thousand dollars to the Chase National Bank. Between the time the San Francisco draft was remitted and the suspension of the bank, the trust company drew out more money from the Anglo-Californian Bank than it deposited there.

The other parties afterwards assigned to the plaintiff their claims for the sums of money remitted by them, and plaintiff brought this suit for the amount thereof, together with the amount remitted by him, contending that the moneys remitted by him and his assignors were received by the bank in trust, for a specific purpose, and were trust funds; that the same were by the bank indistinguishably mingled and mixed with its general funds, and are incapable of being traced or identified, or followed into any changed form or specific property or fund, and were used by the bank in paying its debts, and that, by reason thereof, the plaintiff has a lien upon all the assets of the bank in the hands of the receiver for the repayment of said moneys, and that plaintiff is entitled to have the same repaid to him by the receiver out of the assets of the trust company before any other creditors receive dividends.

No actual money was ever received by the trust company or the receiver from the plaintiff or any of his assignors. The only benefit the trust company got from their remittances was credit for the amounts thereof with its eastern and San Francisco correspondents. No moneys furnished by plaintiff or his assignors ever came into the vaults of the trust company, or into the hands of the receiver, and none of such moneys went to purchase or acquire property, assets, or securities of any kind. The most that can be said is that the amount of these moneys went to pay debts of the trust company. There were many

depositors and general creditors of the company, and it had on hand in money, at the time it suspended business, only eight hundred and sixty-five dollars and fifty-two cents.   It is hopelessly insolvent.

The circuit court decreed the plaintiff a preference and lien upon the assets of the bank for the amount of the money remitted by plaintiff and his assignors, and interest, from which decree the defendants appeal, the circuit court expressly authorizing the receiver to take the appeal.                                                    REVERSED.

For appellant there was a printed brief and an oral argument by *Mr. Ossian Franklin Paxton.*

I.   The moneys for which plaintiff claims a preference were, according to the allegations of the complaint, indistinguishably mixed and mingled with the bank's other moneys, and their identity wholly lost.   None of the same can be followed or traced, either in the original or any modified form, or traced into any other property or fund. The evidence shows that these moneys were used in the bank's business to pay its debts.   They were all consumed. None of them went into or are now in the estate.   Plaintiff cannot, therefore, recover these moneys, even if they were received by the bank in trust, for they cannot be identified or traced into any property or fund.   He can have no preference, but must share equally with other creditors: Text Writers—2 Story's Equity, §§ 1258–59; 2 Pomeroy's Equity, § 1058; 1 Perry on Trusts, §§ 345, 836, 842.   Alabama—*Ellison* v. *Moses,* 95 Ala. 221, 11 So. 349. California—*Lathrop* v. *Bampton,* 31 Cal. 23.   Maine—*Portland Steamboat Company* v. *Locke,* 73 Me. 370; *Goodell* v. *Buck,* 67 Me. 514.   Michigan—*Neely* v. *Rood,* 54 Mich. 134; *Pierce* v. *Halzer,* 65 Mich. 263; *Sherwood* v. *Milford Bank,* 94 Mich. 78, 53 N. W. 923.   Missouri—*Phillips* v. *Overfield,* 100 Mo. 466.

II.    It is clear that upon an accounting in bankruptcy or insolvency, a trust creditor is not entitled to a preference over general creditors of the insolvent merely on the ground of the nature of his claim; that is, that he is a trust creditor as distinguished from a general creditor. If it appears that trust property specifically belonging to the trust is included in the assets, the court doubtless may order it to be restored to the trust. So, also, if it appears that trust property has been wrongfully converted by the trustee and constitutes, although in a changed form, a part of the assets, it would seem to be equitable and in accordance with equitable principles, that the things into which the trust property has been changed, should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property or funds, or proceeds of the trust property, entering into and constituting a part of the assets. This rule simply asserts the right of the true owner to his own property. But it is the general rule, as well in a court of equity as in a court of law, that, in order to follow trust funds, and subject them to the operation of the trust, they must be identified: Alabama— *Goldthwait* v. *Ellison*, 12 So. 812; *St. Louis Brewing Association* v. *Austin*, 13 So. 908.    Colorado— *McClung* v. *Board of Commissioners*, 19 Colo. 122, 34 Pac. 763.    Illinois — *Union National Bank* v. *Goetz*, 138 Ill. 127, 32 Am. St. Rep. 125, 27 N. E. 907.    Maryland— *Englar* v. *Offutt*, 70 Md. 78, 14 Am. St. Rep. 332, 16 Atl. 497.    Massachusetts— *Little* v. *Chadwick*, 151 Mass. 109, 7 L. R. A. 570, 23 N. E. 1005. Mississippi— *Shields* v. *Thomas*, 14 So. 84.    New York— *Cavin* v. *Gleason*, 105 N. Y. 263, 11 N. E. 504; *Holmes* v. *Gilman*, 138 N. Y. 376, 20 L. R. A. 566, 34 Am. St. Rep. 463, 34 N. E. 204; *Atkinson* v. *Rochester Printing Company*, 114 N. Y. 168, 21 N. E. 1007.    North Dakota— *North Dakota Elevator Company* v. *Clark*, 3 N. Dak. 26, 53 N. W. 175.

Pennsylvania — *Thompson's Appeal*, 22 Pa. St. 16; *Appeal of Hopkins*, 9 Atl. 867.   Rhode Island — *Slater* v. *Oriental Mills Company*, 27 Atl. 443.   Texas — *Continental National Bank* v. *Weems*, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85. Wisconsin — *Nonotuck Silk Company* v. *Flanders*, 87 Wis. 237, 58 N. W. 383, overruling previous cases.

III.   Where a bank sent notes endorsed, "for collection and immediate returns," to another bank which collected the same, but mingled the proceeds with its own moneys, the collecting bank became insolvent and a receiver was appointed.   The bank owning the money sued the receiver. *Held*, that as the money collected could not be identified or traced into any specific investment or fund, the plaintiff had no preference: Federal Cases — *Philadelphia National Bank* v. *Doud*, 38 Fed. 172, 2 L. R. A. 480; *Illinois Trust and Savings Bank* v. *First National Bank*, 15 Fed. 858; *Commercial National Bank* v. *Armstrong*, 39 Fed. 692, S. C. 148 U. S. 50; *Frelinghuysen* v. *Nugent*, 36 Fed. 239; *Merchants' and Farmers' Bank* v. *Austin*, 48 Fed. 25; *Anheuser-Busch Brewing Association* v. *Clayton*, 56 Fed. 759; *In re Vetterlein*, 26 Fed. 155; *Cook* v. *Tullis*, 85 U. S. 332; *Bank* v. *Insurance Company*, 104 U. S. 54; *Peters* v. *Bain*, 133 U. S. 670.

I have gone to this length in discussing the very latest decisions on the subject, because it is contended that the doctrine invoked by plaintiff is a new, progressive, or modern doctrine of equity lately established by the courts; that the late cases are nearly unanimous in its favor, and the older cases are no longer authority.   It is my purpose to show that the majority of the courts, and the best courts of the country, by the latest adjudged cases, repudiate the doctrine adopted by the Kansas, Wisconsin, and some of the Iowa cases, and that some of the courts which at first acceded to this doctrine have since discarded it.

In order to allow the preference claimed, the court must hold that a claim for misapplied trust funds is of a higher nature than the claims of the depositors of the bank.    I respectfully submit that no case of authority has ever so decided, and that reason and the principles of equity do not support the contention.

By leave of the court there was also an oral argument by *Mr. Stewart B. Linthicum*, and a printed brief by *Messrs. Williams, Wood,* and *Linthicum.*

The question involved in this case is at all times an interesting one, but is also now, in view of the large number of banks in process of liquidation, and the enormous sums due from them, one of the very greatest importance. This is but one of three similar suits now before this court, and it is certain that others will be brought here. They all proceed upon what is termed the new doctrine that has lately been established by the courts, by which the rule requiring trust property sought to be recovered to be traced and identified, either in the original or some changed form, has been abrogated, and that a *cestui que trust*, whose moneys have been by the trustee dissipated or used in payment of his own debts, is not bound to follow or identify the property or trace it into any other property or specific fund, but upon proof that the trustee misappropriated the trust fund, is entitled to an equitable lien upon the entire estate of the defaulting trustee.    In other words, that a claim for misappropriated trust funds is of a higher nature than the claim of general creditors, and must be first satisfied out of the trustee's estate.

This rule we believe to be supported by neither reason nor authority, and its adoption in this state will be productive of vexatious litigation and great injustice.    We contend that before the allowance of any claim for priority

over the general creditors of an insolvent against the assets in the hands of a receiver or assignee, because of an alleged trust, two things must clearly appear, (1) that a trust exists, and (2) that the trust fund or property has been traced into the hands of the receiver or assignee, either in its original or in some substituted form, so that it can clearly be identified as forming part of the assets in the hands of the receiver or assignee; otherwise, the claimant bears to the estate the relation of a general creditor. Within the last few years a number of decisions have been rendered, which it is said advance this doctrine of equity, but in some of these cases it is evident that the trust funds or proceeds were clearly traced into the hands of the assignee or receiver, and in others the opinions are contrary to sound reason and the principles that are the basis of all equity proceedings. This so-called progressive doctrine, being a departure from well-established principles, should be carefully considered before being adopted, especially where the question is an open one, and may be settled upon its merits.

The right to follow trust funds was never based upon the theory of preference by reason of an unlawful conversion, but is and always was a question of general equity jurisprudence. If it can be shown that the assignee or receiver has property which was trust property, and did not belong to the insolvent, then no wrong will be done by allowing the trust claimant to have what he can show to be his, for otherwise the creditors will receive something to which they are not entitled. This, and no other, is the theory upon which the following of trust funds is upheld. The fact of unlawful conversion by the insolvent does not enter into the matter at all. The mere fact that the insolvent had received property which was impressed with a trust is not sufficient to create an equity superior to that of other creditors, in the absence of an identification

of the property in some form in the hands of the receiver
or assignee.

It has also been urged that if the trust funds have been
used in the payment of the insolvent's debts, his estate
has been increased *pro tanto*.   This view the courts have
likewise refused to adopt, and have clearly demonstrated
its fallacy.   With these statements of what we conceive to
be the law, we pass to a consideration of the adjudged
cases.

For respondent there was printed a brief by *Messrs.
Snow and McCamant*, and an oral argument by *Mr. Wallace
McCamant.*

Our contention is that under the modern equitable doc-
trine a trust fund may be followed into an estate which is
in the custody of a court of equity for distribution when
the fund has gone into that estate, and that this is but an
enlargement of the old rule that a party may follow his
own wherever he may find it, except as against *bona fide*
purchasers, for two reasons: *First*, a trust fund misappro-
priated by a trustee by absorption into a general fund is a
superior equitable lien against this fund in a court of
equity where assets are being marshaled.   It is inequitable
that general creditors should be put upon an equal footing
with a trust claimant whose property cannot be said to
belong to the general creditor.   The position is analogous
to that which prevails in marshaling assets of a partner-
ship.   A partnership debt first attaches against partner-
ship property in preference to the individual debt of the
partner, because in a measure the partnership property is
held in trust for the partnership creditors.   *Second*, the
trust fund having gone into the estate, unless it was squan-
dered the estate has certainly been benefited by it, and
benefited by a fund not the property of the trustee.   The

fact that this benefit may arise directly or indirectly does
not militate against the principle that the estate has been
benefited.   If in the case at bar the claimants' moneys have
gone to swell either the assets, or, which is the same thing,
reduced the outstanding indebtedness against the assets,
the estate has certainly been benefited; as much so as if
property had been purchased by the trust fund, this prop-
erty in turn converted into cash, and this cash in turn used
to pay debts.   Our contention is also that the lien claim
attaches not alone to the money on hand at the time of
the failure, but attaches to the entire fund in the control
of the court for distribution.   This is one of the pro-
gressive doctrines of equity.   There has been a very
liberal advance in the rulings of the courts along this line in
recent years, and we think the great weight of authority
on both sides of the Atlantic now supports our contention:
England — *Knatchbull* v. *Hallett*, L. R. 13 Ch. Div. 696,
36 .Eng. Rep. 779; *Permell* v. *Deffell*, 4 De. G. M. and G.
399.   **Federal Courts** — *National Bank* v. *Insurance Com-
pany*, 104 U. S. 54; *Union Stock Yards' Bank* v. *Gillespie*, 137
U. S. 411; *San Diego Company* v. *California National Bank*, 52
Fed. 59; *Commercial National Bank* v. *Armstrong*, 148 U. S.
50 (disapproving the reasoning in the case at the circuit,
reported in 36 Fed. 684).   **Colorado** — *First National Bank* v.
*Hummell*, 14 Colo. 259, 23 Pac. 986, 8 L. R. A. 788, 20 Am.
St. Rep. 257.   **Georgia** — *Carter* v. *Lipsey*, 70 Ga. 417.   **Illi-
nois** — *Bank* v. *Schween*, 127 Ill. 573.   **Iowa** — *Independent
District of Boyer* v. *King*, 80 Iowa, 497, 45 N. W. 908; *Daven-
port Plow Company* v. *Lamp*, 80 Iowa, 722, 45 N. W. 1049,
20 Am. St. Rep. 447; *Nurse* v. *Satterlee*, 81 Iowa, 491, 46
N. W. 1102; *District Township of Eureka* v. *Farmers' Bank*,
88 Iowa, —, 55 N. W. 342.   **Kansas** — *Ingraham* v. *Ellicott*,
30 Kan. 163; *Peak* v. *Ellicott*, 30 Kan. 156, 1 Pac. 499,
46 Am. Rep. 90; *Myers* v. *Board of Education*, 51 Kan. 87,
32 Pac. 658, 37 Am. St. Rep. 263.   **Michigan** — *Carley* v.

*Graves,* 85 Mich. 483, 48 N. W. 710.    Missouri—*Harrison* v. *Smith,* 83 Mo. 217, 53 Am. Rep. 571; *Stoller* v. *Coates,* 88 Mo. 520.    Nebraska—*Anheuser-Busch Company* v. *Farmers' Bank,* 36 Neb. 31, 53 N. W. 1037; *Griffin* v. *Chase,* 36 Neb. 328, 54 N. W. 573.    New Jersey—*Smith* v. *Combs,* 49 N. J. Eq. 420, 24 Alt. 9; *Thompson* v. *Gloucester Savings Institution,* 8 Atl. 97.    New York—*People* v. *City Bank,* 96 N. Y. 32; *Baker* v. *National Exchange Bank,* 100 N. Y. 31.    Ohio— *Jones* v. *Kilbreth,* 49 Ohio St. 401, 31 N. E. 3460.    South Dakota—*Kimmel* v. *Dickson,* 58 N. W. 561.    Tennessee— *Brocehus* v. *Morgan,* 5 Cent. Law Jour. 53.    Texas—*Continental National Bank* v. *Weems,* 69 Tex. 487, 5 Am. St. Rep. 85, 6 S. W. 805.    Wisconsin—*McLeod* v. *Evans,* 66 Wis. 401, 28 N. W. 173, 57 Am. Rep. 287; *Francis* v. *Evans,* 69 Wis. 115, 33 N. W. 93; *Bowers* v. *Evans,* 7 Wis. 133, 36 N. W. 629.    Text Writers—2 Lewin on Trusts, 394; Mecham on Agency, 536.

The cases cited by counsel are partially cases which simply express the well-established doctrine that the trust fund may be followed into whatever property it can be traced, and where the principle we are contending for was not under discussion, or cases prior to the leading English case of *Knatchbull* v. *Hallett,* where the old principle was extended; partially cases where the facts were analogous to those found in *Cavin* v. *Gleason,* the Michigan case of *Sherwood* v. *Milford Bank,* 94 Mich. 78, and the Colorado case, partially also against the doctrine we contend for.    Counsel's chief cases are from Mississippi, Rhode Island, Texas, Massachusetts, Alabama, Pennsylvania, and North Dakota.    The Alabama and Pennsylvania cases are against us on this proposition, but they are founded upon the doctrine of *stare decisis,* and an examination of the recent cases in those states discloses that they follow the old rule upon the principle of *stare decisis.*

Opinion by MR. CHIEF JUSTICE BEAN.

This case having been submitted in April last on the theory that it involved substantially the same question as *Ferchen* v. *Arndt*, 26 Or. 121, 37 Pac. 161, and *Sharpe* v. *Hartman*, (in which no opinion was written, 26 Or. 131,) submitted about the same time, the opinion in the Ferchen case was supposed to be decisive of the case now under consideration. But appellant's counsel seek, by a petition for rehearing, to escape the effect of that decision by claiming now, for the first time, that the pleadings in this case show that the money for which plaintiff claims a lien, or its proceeds, was in the possession of the trustee bank at the time of its suspension, and constitutes a part of the assets in the receiver's hands. This is a highly technical construction of the pleadings, at variance with the whole theory upon which the case was tried, and is manifestly contrary to the facts as disclosed by the testimony. The money for which plaintiff seeks to enforce a lien was received by the bank prior to the nineteenth day of June, eighteen hundred and ninety-three, and was commingled with and used as a part of its general funds in the usual course of its business from that time until its suspension on the twenty-ninth of the following July; and there is no evidence to show that any part of it or its proceeds were in the possession of the bank at the time of its suspension, or have since come into the hands of the receiver. It is clear, therefore, that upon the facts plaintiff is not entitled to a lien upon any of the assets of the bank in the hands of the receiver, for, as said by Chief Justice LORD in the Ferchen case, "Before one claiming to be a trust creditor can be entitled to a lien or preference over other creditors, he must make it appear that the fund or property of the debtor which he seeks to affect with such a lien or preference includes the trust property or proceeds thereof." The answer alleges that the moneys mentioned in the complaint were deposited with the bank to be paid to a debtor

of the plaintiff and his assignor on the order of Markle;
that after its receipt the bank notified Markle of the same
and he thereupon offered to pay it to such debtor but that
he refused to receive it and "that said Markle therefore
permitted said moneys to remain on deposit with said trust
company where the same were at the time it was forced by
financial embarrassment to suspend its business." It is
contended that the portion of the answer quoted is an alle-
gation or admission that the moneys of plaintiff were in
the bank either in specie or in some changed form at the
time of its suspension, but when construed in connection
with the subject matter of the allegation of which it forms
a part it was evidently not so intended, but only to aver
that the money remained on deposit with the bank in the
sense that it stood on the books of the concern to the credit
of the plaintiff and his assignors. This seems to us mani-
fest when it is remembered that the complaint alleges, and
the answer admits, that the bank placed the moneys of
plaintiff "in its treasury for use in connection with its bank-
ing business, and that having been so placed in the treas-
ury aforesaid, they were paid out in the course of its busi-
ness affairs as a banking institution. That thereupon the
defendant wholly destroyed the identity of plaintiff's said
remittance and the identity of the moneys of the other
parties paid over to it in trust as aforesaid." And "that
by reason of the wrongful mingling of the moneys of
plaintiff and the other parties aforesaid it is impossible to
follow the moneys so paid to the defendant company and
that the same are wholly incapable of identification."

The complaint seems to have been drawn and the case
was tried on the theory that plaintiff could not trace his
money or the proceeds thereof into the hands of the re-
ceiver. This position is, in our opinion, fully warranted
by the record. No allusion is made by appellant in his
brief to the alleged admissions of the answer, nor was his

contention in this court that he was entitled to a lien because his money or the proceeds thereof were actually in the possession of the receiver, but on the doctrine that (quoting from the brief) "where funds come into the hands of a trustee impressed with a trust in favor of the principal and are wrongfully mingled by the trustee with his own funds so as to be incapable of identification, the *cestui que' trust* has an equitable lien on all the assets of the defaulting trustee to the amount of the fund so misappropriated." In our opinion, therefore, there is nothing in the record in this case to exempt it from the rule announced in *Ferchen* v. *Arndt* and applied in the Sharp case, the facts of which appellant states in his brief are "substantially identical" with those in the case under consideration.

REHEARING DENIED.