## SHUTE *v.* HINMAN.

[56 Pac. 412; 58 Pac. 882.]

1. FOLLOWING TRUST FUNDS—PREFERENCES.*—One claiming a preference over other creditors on account of trust property must identify the specific property, or its proceeds, or show that the property of the debtor which he seeks to affect with the preference includes the trust property: *Ferchen* v. *Arndt*, 26 Or. 121, cited.

2. IDEM.—Where a trustee deposited trust funds to his credit in his own bank, and such funds were commingled with and used as a part of the general funds of the bank, in the ordinary course of its business, so that the identity of the trust fund was wholly lost, the trust creditor is not entitled to a preference over other creditors out of money left in the bank upon an assignment by the trustee for creditors.

---

*NOTE.—On the same subject, see *State* v. *Foster*, 63 Am. St. Rep. 60, 29 L. R. A. 226, 250; *Henderson* v. *O'Connor*, 106 Cal. 385 (39 Pac. 786); *Little* v. *Chadwick*, 7 L. R. A. 570; *First National Bank* v. *Hummel*. 8 L. R. A. 788, 20 Am. St. Rep. 257.
—REPORTER.

From Washington :   THOS. A. McBRIDE, Judge.

Proceeding by J. W. Shute, administrator, against A. Hinman, assignee.   From a decree for plaintiff, defendant appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Samuel B. Huston.*

Ror respondent there was a brief over the name of *Bagley & Brown*, with an oral argument by *Mr. Thos. H. Tongue.*

MR. JUSTICE BEAN delivered the opinion.

This is a proceeding to require the assignee of the estate of Anton Pfanner, insolvent, to pay the administrator of Martin Manning, deceased, $879.84 out of the moneys coming into his hands as assignee, on the ground that it is a trust fund.   The facts are that on February 3, 1896, Pfanner was appointed and qualified as administrator of the estate of Martin Manning, deceased, and acted as such until June, 1897, when he was removed by the county court, and the present petitioner appointed in his stead.   Soon after his appointment as administrator, Pfanner purchased and assumed control of a banking house at Forest Grove;   and all funds received by him belonging to the estate were deposited in the bank to his credit, and commingled with and used as a part of the general funds of the bank in the usual course of business.   On June 10, 1897, the bank failed, and Pfanner made a general assignment for the benefit of his creditors.   He had in the bank vault at the time the sum of $1,755.69 in cash, and was indebted to the Manning estate in the sum of $879.84 for

moneys collected by him as administrator. The present administrator sets out these facts in his petition, and prays an order directing the assignee to pay over such sum to him out of the funds on hand at the time of the assignment. The petition was granted, and the assignee appeals, claiming that the evidence is insufficient to establish the right of the Manning estate to a preference over the other creditors of Pfanner.

1. The rule in this state is that one claiming a preference over other creditors, on account of trust property, must either identify the specific property, or the proceeds thereof, or show that the property of the debtor which he seeks to affect with such lien or preference includes the trust property. The rule formerly prevailed that the claimant must identify the particular property or the proceeds thereof; but this has been so modified that, although its identity has been completely lost, equity will afford relief if it is shown to have been mingled into a common mass, and forms a part thereof. "This equitable doctrine is put upon the ground," says Mr. Chief Justice LORD, "that the real owner has the right to retake and reclaim his property, through all its transformations and forms, so long as it may be traced, whether its identity is preserved, or is merged into a mass of which it forms a part. To accomplish this end, when such trust property has been mingled into a mass of which it forms a part, but its identity is lost, equity affords relief by creating a charge or lien upon such mass for its ascertainable value. The right to such relief has its basis in the right of property, and 'simply asserts,' as ANDREWS, J., says, 'the right of the true owner to his own property :' *Cavin* v. *Gleason*, 105 N. Y. 262 (11 N. E. 504). But whether such owner seeks to recover specific property, or to create a lien upon a mass or fund, he must trace such property, and show

that it belongs to him, or that it has gone into, and then remains in, the mass which he seeks to impress with a lien or charge. In such cases the question to be determined always is whether the trust property or fund, or the proceeds thereof, is traceable into any specific property or fund. Before, therefore, one claiming to be a trust creditor can be entitled to a lien or preference over other creditors, he must make it appear that the fund or property of the debtor which he seeks to affect with such lien or preference includes the trust property, or the proceeds thereof:" *Ferchen* v. *Arndt*, 26 Or. 121 (29 L. R. A. 664, 46 Am. St. Rep. 603, 37 Pac. 161, 163).

2. By applying this rule to the facts in the case before us, its solution presents no difficulty. The evidence shows that the money for which the plaintiff claims a preference was indiscriminately mixed and mingled with the bank's other money, and its identity wholly lost. None of it has been traced or followed into the mass sought to be charged with the lien. It was used by the bank in the ordinary course of its business to pay its debts and obligations, the same as any other money; and, so far as this record shows, none of it was in the possession of the bank at the time of its suspension, or has since come into the hands of the assignee.

This is not a case where the trustee has mingled the trust fund with his own, and a balance remains sufficient to satisfy the trust, as in *Knatchbull* v. *Hallett*, 13 Ch. Div. 696; but here the trust fund was commingled with the other funds of the bank, the same as that of other depositors, and was paid out and disbursed in the same manner. It is manifest, therefore, that the petitioner has no preference over other creditors. The decree must therefore be reversed, and the petition dismissed; and it is so ordered.

REVERSED.

6 November, 1899.

ON REHEARING.

MR. JUSTICE MOORE delivered the opinion.

A rehearing having been granted in this cause, it is insisted that, inasmuch as the testimony conclusively shows that Pfanner placed the $879.84, belonging to the Manning estate in his bank, and thereafter, until the assignment, retained more than that amount therein, it was error in the former opinion, in speaking of the money which was sought to be impressed with a preference, to say that "none of it has been traced or followed into the mass sought to be charged with the lien." Pfanner, as a witness, says, in substance, that when appointed administrator he was a broker, and kept the funds of the estate in his safe, but when he went into the banking business they were placed in his bank, and that most of his collections as administrator were made after he engaged in the latter business. In speaking of the manner in which the money of the estate was deposited, he says, "It was placed with the bank's money, the same as any other money." If Pfanner had continued in the business of a broker, and kept the funds of the estate in his safe, but commingled with his own, it is quite probable that if, at the time of the assignment, the money therein was sufficient to satisfy the demands of his trust, a court of equity, upon proper application, would have enforced a lien thereon in favor of the *cestui que* trust. So, too, as intimated in the former opinion, if, after having mixed the money of the estate with his own, Pfanner had made a general deposit thereof in a bank, where it remained at the time of the assignment, a court of equity would undoubtedly have impressed the money

with a lien in favor of the estate : *Overseers of Poor of Norfolk* v. *Bank of Virginia*, 2 Gratt. 544 (44 Am. Dec. 399); *Stair* v. *New York Nat. Bank*, 55 Pa. St. 364 (93 Am. Dec. 759); *Van Allen* v. *Bank*, 52 N. Y. 1; *Central Nat. Bank* v. *Connecticut Mut. Life Ins. Co.*, 104 U. S. 54. This rule is founded upon the principle that if a trustee mingles with his own money the funds of his *cestui que* trust, the whole will be regarded as belonging to the latter, except so far as the trustee may be able to distinguish his own : *Hart* v. *Ten Eyck*, 2 Johns, Ch. 62, 108.

It has been held, by invoking the presumption that the ordinary course of business has been followed (Hill's Ann. Laws, § 776, Subd. 20), that, in the absence of evidence to the contrary, a deposit of money in a bank will be regarded as a general deposit (*Alston* v. *State*, 92 Ala. 124, 13 L. R. A. 659, 9 South. 732). However, there exists no necessity, in the case at bar, for invoking this presumption, for the testimony conclusively shows that Pfanner made a general deposit of the money of the estate in the bank. This created the relation of creditor and debtor between him and the bank, thereby giving it the right to mingle the money so deposited with its own funds : Morse, Banks, § 289; *Cadwell* v. *King*, 84 Iowa, 228 (50 N. W. 975); *Catlin* v. *Bank*, 7 Conn. 487; *Coffin* v. *Anderson*, 4 Blackf. 395; *Horwitz* v. *Ellinger*, 31 Md. 492; *Carman* v. *Bank*, 61 Md. 467; *Marine Bank* v. *Fulton Bank*, 69 U. S. (2 Wall.) 252; *Thompson* v. *Riggs*, 72 U. S. (5 Wall.) 663; *Bank* v. *Millard*, 77 U. S. (10 Wall). 152. Although the bank may have retained in its vaults at all times a sum greater than the trust funds, a general deposit thereof was technically a use of such funds in its business : *St. Paul Trust Co.* v. *Kittson*, 62 Minn. 408 (65 N. W. 74). In *Otis* v. *Gross*, 96 Ill. 612 (36 Am. Rep. 157), a clerk of a court having made a

general deposit of trust funds in a bank which became insolvent, sought to impress the money of the bank in the hands of a receiver with a preferential lien, but the relief was denied, the court holding that he must share *pro rata* with the other creditors of the bank. In *Wetherell* v. *O'Brien*, 140 Ill. 146 (33 Am. St. Rep. 221, 29 N. E. 904), an executor made a general deposit of the funds of his testator in a bank which subsequently failed, and in a suit to impress with an equitable lien the money of the bank in the possession of its assignee it was held that the suit would not lie; the court saying: "It is clear that it was impossible, when the assignment was made, to identify the money of the appellee as a separate trust fund, distinct from the other moneys of the bank."

In *McLain* v. *Wallace*, 103 Ind. 562 (5 N. E. 911), a clerk of a court, having made a general deposit of trust funds in a bank in his own name, to which he appended the word "clerk," sought to establish a lien on the money of the bank in the hands of its receiver; but it was held that the word "clerk" did not make the deposit a special one, and that the suit would not lie, the court saying: "Deposits in bank are either general or special. Upon a special deposit the bank is merely a bailee, and is bound according to the terms of the special deposit; but on a general deposit, without special agreement, the money becomes the property of the bank, and the depositor has no longer any claim on that money. His claim is on the bank for a like amount of money: *Coffin* v. *Anderson*, 4 Blackf. 395; *McEwen* v. *Davis*, 39 Ind. 109. Upon the insolvency of a bank, its general depositors must be paid *pro rata*." In *Fletcher* v. *Sharpe*, 108 Ind. 276 (9 N. E. 142), an administrator having made a general deposit of the funds of his intestate in a bank, which subsequently became insolvent, it was held, in a suit to sub-

ject the money of the bank to an equitable lien, that he was not entitled to any preference over the other general depositors.

The reason for this rule is found in the fact that upon a general deposit of money in a bank it becomes the property of the latter, and, when indiscriminately mixed and mingled with the other money of the bank which becomes insolvent, its identity is wholly lost when any portion of it is checked out, in which case it is impossible to trace the fund into the hands of the bank's assignee. The fact that Pfanner the administrator and Pfanner the banker were one and the same person, so that the bank must have known the character of the funds so deposited, affords no reason for changing the rule that a general deposit cannot be impressed with a trust after the bank in which it is placed has made a general assignment: *Shields* v. *Thomas*, 71 Miss. 260 (42 Am. St. Rep. 458, 14 South. 84). Having discovered no error in the former opinion, we are compelled to adhere therein.

REVERSED.