## JOHN H. BLYTHE v. JAN (ALSO KNOWN AS JOHN) KUJAWA AND OTHERS.[1]

June 29, 1928.

No. 26,774.

**Fund left in bank in escrow for agreed specific purpose is a trust fund.**

1. A fund, left in a bank in escrow for the agreed specific purpose of being paid over to a third person upon completion of a land sale, is a trust fund, whether such fund is received by the bank in the form of money or a check or draft equivalent to money.

**Owner of such fund entitled to recover it as preferred creditor, if insolvent bank turned over to its receiver more money than sufficient to pay it.**

2. Where the local bank receiving such fund commingles it with its own money or with its cash or credit fund in its correspondent bank, the owner of the trust fund is entitled to recover it as a preference from the receiver of the local bank, it appearing that the bank, at all times since the fund was received, kept on hand and turned over to its receiver more than sufficient money to pay the same.

**Exclusion of evidence offered to prove such fund was sent to its correspondent bank and paid out for local bank was not error.**

3. It was not error, under the circumstances shown in this case, for the court to exclude evidence offered to prove that the local bank sent this fund to its correspondent bank and received credit therefor in that bank, and that thereafter its credit in the correspondent bank was reduced to a sum less than the fund so received by reason of the correspondent bank's paying out money for the local bank for its debts or obligations.

Banks and Banking, 7 C. J. p. 744 n. 93; p. 751 n. 78, 80.

---

See note in 31 A. L. R. 472; 39 A. L. R. 930; 3 R. C. L. 558; 1 R. C. L. Supp. 855; 5 R. C. L. Supp. 184; 6 R. C. L. Supp. 188; 7 R. C. L. Supp. 97.

Action in the district court for Steele county to have declared a trust fund the sum of $4,500 deposited in the defendant National

[1]Reported in 220 N. W. 168.

Farmers Bank of Owatonna by the brother of plaintiff for the specific purpose of being paid to the defendants Jan and Magline Kujawa upon the completion of a land sale by the Kujawas to the plaintiff. There were findings for the plaintiff, and the defendant H. E. Skinner as receiver of the defendant bank (which failed before the completion of the transaction) appealed from an order, Senn, J. denying his motion for a new trial. Affirmed.

*Meighen, Knudson & Sturtz,* for appellant.

*Nelson & Nelson,* for respondent.

*E. W. Richter* and *Edgerton, Dohs & Edgerton,* for defendants Kujawa.

OLSEN, C.

Appeal by defendant H. E. Skinner as receiver of the National Farmers Bank of Owatonna from an order denying his motion for a new trial.

Plaintiff purchased a farm from the defendants Kujawa. To close the sale on March 1, 1926, he was to pay them $4,500 and give a note and mortgage for the balance of the purchase price, upon approval of the title by his attorney and receipt of a warranty deed of the farm. It was agreed that the $4,500 and the note and mortgage be left in escrow in the National Farmers Bank until title was perfected and approved and deed given. The $4,500 and the note and mortgage were then to be delivered by the bank to the Kujawas. Plaintiff, a nonresident, sent his brother, F. M. Blythe, to the bank with the note and mortgage and a check for $4,500 on a Buffalo, New York, bank, payable to the order of the brother. He informed the bank of the land transaction and escrow agreement. An officer of the bank directed him to deposit the check in the bank, which was done. The banker then made out a check for the amount on the National Farmers Bank, payable to John Kujawa, and directed F. M. Blythe to sign it, which he did. The note and mortgage and this check to Kujawa were then placed in an envelope by the banker and indorsed on the outside: "F. M. Blythe and John Kujawa. In escrow. 3-15-26. When K gives W. D. and S. R. Nelson O. K's title deliver $4,500 to K." The envelope was

then kept by the bank.    The check on the Buffalo bank was accepted and credited in the National Farmers Bank to the account of the brother, F. M. Blythe.    The bank credited its assets with the amount of the check.    F. M. Blythe never drew out any of the $4,500 so deposited.    The bank failed September 8, 1926, and its assets passed into the hands of, defendant Skinner, as its receiver, before the title to the land was perfected.    The bank, at all times after it received said check and up to the time the receiver took charge thereof, had and kept in its vaults not less than $13,600 in cash; and this amount, together with all other assets of the bank, came into the hands of the receiver.    The title to the farm was perfected and warranty deed tendered to the receiver of the bank.    He refused to receive the deed or recognize the escrow.    The defendants Kujawa refused to deliver the deed to plaintiff until paid the $4,500.

The court found that the $4,500 was a trust fund and special deposit held by the bank.    It held, by its amended conclusions of law, that plaintiff was entitled to the deed if within 30 days he paid to the Kujawas the $4,500, with interest from January 7, 1927, the date on which the title was approved, and delivered to Kujawa the note and mortgage.    It then further held that plaintiff was the owner and entitled to the $4,500 trust fund, and that the receiver was bound to pay same to plaintiff as a preferred claim.

1.    We find no difficulty in holding that the evidence sustains the finding of the trial court that the $4,500 deposit was a trust fund, held in trust and escrow by the bank for the specific purpose of paying the same over to the Kujawas when title to the land was approved and deed delivered by them.    In, so holding we have not overlooked the evidence that the check given by plaintiff was payable to the order of his brother, F. M. Blythe; that by direction of the bank's officer F. M. Blythe deposited the check in the bank; that the bank did not place the item in a separate account but credited it to his regular checking account; that F. M. Blythe deposited and checked out moneys from this account, maintaining however at all times thereafter a balance of not less than $4,500; that monthly statements of his account were delivered to him showing that this

item was so credited to him; that F. M. Blythe testified in part that he told the officer of the bank that his brother had instructed him "to take the $4,500, or the check, and either have it cashed or put it in escrow in the way that it should be put in." If that were all the evidence it would not establish a trust. But the officer of the bank was informed of the land transaction and of the escrow agreement, that the check or money and the papers were to be left in escrow for the purpose of paying for the land when the title was approved and deed given. He accepted, for the bank, the arrangement so made. In order to carry out the escrow agreement, he directed that the check from plaintiff be deposited as stated, and made out and directed F. M. Blythe to sign the check to Kujawa, which was then placed in the envelope with the papers. The indorsement, made by the bank officer on the envelope in which the papers were kept, was that when the deed was given and title approved the bank was to deliver $4,500 to Kujawa.

It is contended that the $4,500 credit in his checking account was under the sole control of F. M. Blythe and subject to be checked out by him at any time. We are unable to so hold. The bank had full information as to the specific use to be made of this fund or credit; it had agreed to the escrow and consented to act thereunder; it had agreed to deliver $4,500 to Kujawa when the proper time came and, as authority so to do, it had taken and held Blythe's check for that amount upon his account or funds in the bank. In that situation it was the duty and legal right of the bank not to honor or pay any checks on Blythe's account which would reduce his funds in the bank below $4,500. It was in no different position than if it had certified his check to Kujawa and charged it against his account, which it could have done at any time. That such was the understanding of both Blythe and the bank fairly appears, for he did not attempt to reduce the fund, but when he needed additional money borrowed from the bank instead.

2. Appellant states that the burden of proof rested upon plaintiff to show that the claimed trust fund reached the receiver's hands, and that the assets coming into his hands were actually augmented thereby. He contends that plaintiff failed to so show.

The burden of proof in that regard apparently goes no further than to require plaintiff to show that the fund actually came into the hands of the bank. The question was considered in Stein v. Kemp, 132 Minn. 44, 155 N. W. 1052. There was no evidence as to what amount of money or property passed to the receiver. The court held that when plaintiff traced the fund into the hands of the bank it was presumed to remain there, and it was then up to defendant to show otherwise. Hudspeth v. Union T. & S. Bank, 196 Iowa, 706, 195 N. W. 378, 31 A. L. R. 466, holds the same, and further states that it is not material whether the balance was preserved in the form of money or in other property. The old rule that one seeking to recover trust funds or property from the receiver of an insolvent bank or person must trace the identical fund or property into the hands of the receiver has largely been departed from. So far as money is concerned, there is today little use of actual currency in business transactions, except for small change. Practically all business is done by transfer of credits, by use of checks and drafts as substitutes for currency. To trace actual cash in such a situation is practically impossible. Here the plaintiff delivered a check to the bank. The bank accepted it. The check was a substitute for that amount of money and had the same value as currency. Why make any distinction? The bank's assets were immediately enhanced to the full amount of the check.

The present rule, stated in 3 R. C. L. p. 638, is that the identical fund or proceeds need not be traced, it being sufficient to show that the assets in the hands of the receiver were necessarily increased by the commingling of the proceeds with the general funds of the bank. In the case of Frelinghuysen v. Nugent (C. C.) 36 F. 229, quoted in Peters v. Bain, 133 U. S. 670, 693, 10 S. Ct. 354, 33 L. ed. 696, this is said:

"Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured * * * a priority of right over the other creditors of the possessor."

The case of Macy v. Roedenbeck (C. C. A.) 227 F. 346, L. R. A. 1916C, p. 12, appears quite similar to this case. There the local bank received a check, which it forwarded to its Chicago correspondent for credit, and the check was collected and credited. The local bank failed before making payment to the owner of the check. Its account with the Chicago bank was overdrawn at the time that the bank received the proceeds of the check and continued to be overdrawn until the local bank failed; that is, the proceeds of the check were all absorbed by indebtedness to the Chicago bank for obligations paid by it for the local bank. At the time it failed the local bank had $426.70 in cash on hand in its own banking house, which went into the hands of the receiver. It was held that the owner of the check was a preferred creditor and entitled to receive his pro rata share, with other preferred creditors, of the cash so received by the receiver and of any cash collected by him from the recovery of voidable preferences, there being certain payments by the bank which the receiver was seeking to recover as preferences.

The defendant bank, having received the equivalent of $4,500 in cash as a trust fund and so treating it, and having at all times thereafter kept more than $13,000 in cash on hand and having turned over to the receiver that amount, the rule that the owner of such trust fund is entitled to recover same out of the cash assets may well apply. The case of In re Seven Corners Bank, 58 Minn. 5, 59 N. W. 633, differs from the case at bar to some extent. The check there received was not a trust deposit. The trust rule was invoked on the ground of the insolvency of the bank at the time it received the check. The opinion does not show that the bank accepted the check and gave credit therefor, and the bank received no credit in any other bank therefor.

The case of Klessig v. Lea, 158 Minn. 14, 196 N. W. 655, is readily distinguished. The suit was against the administrator to recover as a trust fund the sale price of a lot sold by the decedent in his lifetime. No money came into the hands of the administrator, and there was no showing as to what the deceased had done with the money received from the sale.

The cases here, later than the Seven Corners Bank case, 58 Minn. 5, 59 N. W. 633, tend to sustain recovery in the present case. In Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6, it is pointed out that decisions hold that the trust fund may be recovered even if it is indistinguishably mixed with other money of the trustee, and that it may be so recovered even if it does not appear that the identical trust fund is in the mixture, if it appears that since the confusion there has always remained on hand a balance equal to the amount of the trust fund originally going into the mixture; that other decisions hold that if the trust fund went to augment the estate of the trustee (and not to pay his other debts) recovery may be had.

The case of City of St. Paul v. Seymour, 71 Minn. 303, 74 N. W. 136, is very similar to the Seven Corners Bank case, 58 Minn. 5, 59 N. W. 633. It was there found that the trust fund never went directly to augment the assets of the estate.

Stein v. Kemp, 132 Minn. 44, 155 N. W. 1052; Stabbert v. Manahan, 163 Minn. 214, 203 N. W. 611; Blummer v. Scandinavian Am. St. Bank, 169 Minn. 89, 210 N. W. 865, and Milne v. Capital Tr. & Sav. Bank, 170 Minn. 66, 211 N. W. 954, are late cases on the subject. In the Blummer case, 169 Minn. 89, 210 N. W. 865, this statement appears: "It was a special deposit. The fact that the money was mingled with other funds is not controlling. He is a preferred creditor. Plaintiff must have his property or its equivalent." A list of cases is cited.

3. The receiver offered to prove that the check in question was sent by defendant bank to its Chicago correspondent for collection and credit and was there credited to defendant bank, and that thereafter all of its deposit in the Chicago bank was dissipated in payment of debts of the defendant bank except a balance of $353.48, and that therefore no part of the proceeds of the check in excess of that sum ever came into the hands of the receiver. Objections to these offers and to questions asked for the purpose of so proving were sustained by the trial court. These rulings are assigned as errors.

The receiver's answer herein admits and alleges, in reference to the deposit in question, that " * * * Frank M. Blythe deposited

in said bank as a general deposit, and in the usual course of business, the sum of $4,500.00, thereby creating the relationship of debtor and creditor; that said amount was duly and immediately credited to his account in said bank and said funds so deposited were immediately commingled and confused with the other funds of said bank and no part of said $4,500.00 ever came into the possession or control of this answering defendant." The answer then specifically denies that the $4,500 was left in escrow for any specific purpose or as a special deposit, or that there was any trust. In another paragraph of the answer it is stated that "the sole controversy is whether or not the $4,500 received by said bank from the plaintiff is a preferred claim which should be paid in full."

There is no suggestion in the answer that the fund was sent to Chicago, or dissipated, or used in the payment of debts. The complaint alleges clearly that the sum of $4,500 was left with the bank in escrow as a special deposit for the specific payment of that sum to the Kujawas; that it was a trust fund. The exclusion of these offers and evidence may well be rested on the objection that they were not admissible under the pleadings. That aside, the offers concede that the local bank received full credit for the check, and it thereby immediately became a part of its assets. Whether the bank thereafter paid out obligations direct over its counter at home or through its Chicago correspondent would not seem important. Whether a man uses his left or his right hand in paying an obligation does not matter. We are unable to make any distinction between the cash funds kept by this bank in its own vault and in the vault of its Chicago correspondent. The money in either place was a part of the cash holdings of the bank as a whole. And having at all times since the receipt of this fund had on hand and turned over to the receiver cash more than sufficient to pay this trust fund, neither the receiver nor the general creditors have cause for complaint.

Order affirmed.