Argued February 2; reversed March 28, 1933

# SCHOOL DISTRICT NO. 62 OF POLK COUNTY *v.* SCHRAMM

(20 P. (2d) 241)

*Oscar Hayter,* of Dallas, for appellant.
*E. L. Crawford,* of Salem, for respondents.

RAND, C. J. On February 18, 1931, the plaintiff school district deposited with the Farmers State Bank of Independence, hereinafter referred to as the insolvent bank, a check for $4,432.78, drawn payable to its order by the county treasurer on the First National Bank of Monmouth, and was given immediate credit on the books of the bank for that amount. At the time it received the deposit the bank was known to its officers to be insolvent and on the second day thereafter it closed its doors for business and the State Superintendent of Banks took over its assets and property for liquidation. During all said time, however, it had more cash on hand in its own vaults than the amount of said deposit and all said moneys were taken over and came into the hands of the Superintendent of Banks. Upon receiving plaintiff's deposit, the insolvent bank, instead of making the collection itself, forwarded the check to its correspondent, the Ladd & Bush Bank of Salem, which collected the same and credited the account of the insolvent bank with the proceeds thereof. When the Ladd & Bush Bank received the check, the insolvent bank had overdrawn its account in the sum of $180.90, and, after making said collection and before the suspension of the insolvent bank, the Ladd & Bush Bank paid from this and other moneys in its hands belonging to the insolvent bank various sums of money so that at the close of its account the insolvent bank had to its credit in said account with the Ladd & Bush Bank the sum of $100.14 only.

Upon these facts, the learned trial judge found that the Farmers State Bank was known to its officers to be insolvent when it received plaintiff's check for deposit; that its acceptance of the deposit under those circumstances resulted in the creation of a trust *ex*

*maleficio,* which entitled plaintiff to recover the proceeds of the check if the same could be traced and identified. But he was of the opinion that, since the evidence affirmatively showed that the check had been forwarded to and collected by a correspondent bank and substantially all the proceeds thereof had been subsequently paid out for the insolvent bank before its suspension, this amounted to such a dissipation of the trust fund and destruction of the subject of the trust as to terminate the trust and render it impossible for plaintiff to trace any part of the trust fund into the hands of the Superintendent of Banks.

 It is well settled that the acceptance of a deposit by a bank is a representation of solvency and that, when a bank, whose officers know it to be insolvent, accepts a general deposit from any one who believes it to be solvent, the transaction is fraudulent and entitles such depositor, as in other cases where contracts are induced by fraud, to rescind the contract and recover back from the fraudulent bank what he has parted with, or its value. This, of course, he may do in an action at law as in other like cases. But in the case of an insolvent bank whose property has come into the hands of a receiver and where the deposit was a general deposit in the form of money, or checks and drafts which are the equivalent of money, the money has no earmarks and, when it has been mixed with other moneys of the bank, the legal remedy is wholly inadequate since there is no possible way of identifying the particular money deposited. For that reason equity treats the transaction as creating a trust *ex maleficio* and regards the money so deposited as a trust fund and gives to the depositor, as in the case of other trust funds, the right to follow and reclaim the trust property from any person in possession of

it who is not a bona fide purchaser for value and without notice, if the deposit or its proceeds can be traced and identified. *Ferchen v. Arndt,* 26 Or. 121 (37 P. 161, 46 Am. St. Rep. 603, 29 L. R. A. 664); *Muhlenberg v. Northwest Loan and Trust Co.,* 26 Or. 132 (38 P. 932, 29 L. R. A. 667); *Rockwell v. Portland Savings Bank,* 31 Or. 431 (50 P. 566); *Re Assignment of Bank of Oregon,* 32 Or. 84 (51 P. 81); *Shute v. Hinman,* 34 Or. 578 (56 P. 412, 58 P. 882, 47 L. R. A. 265); *Oregon Timber Co. v. Seton,* 59 Or. 64 (111 P. 376, 115 P. 1121); *Portland Building Co. v. State Bank of Portland,* 110 Or. 61 (222 P. 740); *Lane v. First National Bank,* 131 Or. 350 (270 P. 476, 281 P. 172, 283 P. 17).

■ The authorities all agree that where property or funds which are the subject of a trust are used by a bank in such a way as merely to decrease its liabilities and not to augment its assets, no charge upon the assets arises in favor of the *cestui que* trust and this is settled law in this state. *Ferchen v. Arndt,* supra; *Muhlenberg v. Northwest Loan and Trust Co.,* supra; *Rockwell v. Portland Savings Bank,* supra.

■■ On the other hand, as said by Judge Parker in *Schumacher v. Harriett,* 52 Fed. (2d) 817 (82 A. L. R. 1):

"It is equally well settled that, where a bank acting as trustee mingles a trust fund with its other funds, the common fund resulting is impressed with a trust to the amount of the trust fund which has been so commingled and lost its identity; and in such case the cestui que trust is entitled to have the trust declared and the trust fund separated from the other funds, even though the bank subsequently to the commingling may have added to and made payments from the common fund, as the presumption is that it respected the trust and did not make payment from the trust property. A limitation upon the rule is that the amount for which the trust is declared may not exceed the

smallest amount which the common fund contained subsequent to the commingling of the trust funds. Knatchbull v. Hallett, 13 Ch. D. 696; Central National Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. ed. 693; Poisson v. Williams (D. C.) 15 F. (2d) 582; Brennan v. Tillinghast (C. C. A. 6th) 201 F. 609, 612; Empire State Surety Co. v. Carroll (C. C. A. 8th) 194 F. 593, 605''.

■ In such case the presumption is that the trustee respected the trust and did not make payments from the trust property. *Portland Building Co. v. State Bank of Portland,* supra; *Lane v. First National Bank,* supra. See also the exhaustive note beginning at page 46 of 82 A. L. R. Under this presumption, it is a sufficient tracing to show that the trust money was mingled by the bank with its own funds and that a sum equal to or greater than the trust fund remained continuously in the common fund until the Superintendent of Banks took charge of the bank and, therefore, where it is shown that a trust fund has been commingled by a bank with its own funds and thereby lost its identity, the cash remaining in the bank at the time it closed its doors is presumed to include the trust fund if it exceeds the amount of the trust fund, or, if it is less than the trust fund, it is presumed to be a part thereof, and, where the general funds of the bank have passed into the hands of the Superintendent of Banks, it will be presumed, in the absence of proof to the contrary, that, to the extent of the fund remaining, it is the trust fund. Under this presumption, the withdrawals and disbursements from the common fund are presumed to be made from the bank's own portion thereof, rather than from the trust fund, and any balance remaining in the mixed fund is presumed to contain or represent the trust money. See *Portland*

*Building Co. v. State Bank of Portland,* supra, and *Lane v. First National Bank,* supra. Also see cases cited in support thereof in the note to 82 A. L. R., p. 204.

It is conceded that if the check had been retained and collected by the insolvent bank and the proceeds had then been mingled with the bank's own money or, if the Ladd & Bush Bank had had in its account when the insolvent bank closed its doors an amount in excess of the amount of the check and its balance had never been less than that amount, then, in either event, when these moneys came into the hands of the Superintendent of Banks a trust in favor of plaintiff would have been preserved. But it is contended that the forwarding of the check for credit and the payment out of these funds by the Ladd & Bush Bank with the exception of $100.14 amount to a destruction of the trust property and an extinguishment of the trust.

The correctness of this position we think depends upon how this transaction is to be viewed and whether this check is to be considered as the equivalent of so much money or merely the evidence of an assignment of the money represented thereby. In the usual course of the banking business we assume, there being no evidence to the contrary, that the money represented by the check never left the vaults of the First National Bank of Monmouth on which the check was drawn. The Ladd & Bush Bank is one of the leading banking institutions of this section and presumably it was the correspondent of both the insolvent bank and the drawee bank and, presumably, when the check reached the Ladd & Bush Bank, the insolvent bank was merely credited with the amount and the drawee bank was merely charged with that amount in their respective accounts with the Ladd & Bush Bank.

■ If we are at liberty to consider only the form of the transaction, then no actual exchange of money took place between any of the banks and there could be, of course, no subsequent commingling of the moneys of one bank with those of another. Viewed in that light, the transaction was nothing more than the mere deposit of a check which was immediately transferred to another bank and the proceeds then paid out by that bank, which amounted to a mere shifting of accounts without any augmentation of the funds of the bank and with nothing for the trust to operate upon. But viewed in the light in which the transaction actually occurred and giving to it the effect which the parties intended it to have, then it must be treated not as a mere deposit of a check alone but as a deposit of money or its equivalent, which the parties intended to treat as money when the deposit was made. That the bank regarded the deposit as an actual deposit of money is evidenced by the fact that immediate credit was given therefor upon the books of the bank. Even under this view many authorities hold that when the correspondent bank paid out the money, the trust was extinguished. The more modern doctrine, however, and the one which seems better calculated to promote justice, looks to the substance and not to the form of the transaction and gives to it the effect which the parties intended it to have, which was to treat the transaction as a deposit of money. It was so treated both by the insolvent bank and by the Ladd & Bush Bank and, when so treated, the funds of both said banks were augmented by the acceptance of the deposit.

■ All parties admit that when the insolvent bank received the check and credited the amount thereof to the account of the plaintiff district, it had in cash on

hand in its own vaults moneys in excess of the amount of the trust fund. It had the right, therefore, and it was within its power, when forwarding the check to the Ladd & Bush Bank, to hold an equal amount of its own moneys in trust for plaintiff as a separable part of its own funds with which the trust money became commingled. The presumption is that the insolvent bank in its dealings with the plaintiff district intended to act honestly. This presumption, it is contended, is overcome by the manner in which the check was handled but it is not necessary for plaintiff to rely upon that presumption for nothing is better settled in the law that, when a party has power to do an act in a lawful manner, he will not be permitted to say that he did it in a wrongful manner, and what the bank itself is not permitted to say the Superintendent of Banks, who stands in the shoes of the insolvent bank, is precluded from saying. As was so well said by Jessel, M. R., in the case of *Knatchbull v. Hallett,* 13 L. Rep., C. D. (1879) 696, 727:

"* * * Now, first upon principle, nothing can be better settled, either in our own law, or, I suppose, the law of all civilized countries, than this, that where a man does an act which may be rightfully performed, he cannot say that that act was intentionally and in fact done wrongly. A man who has a right of entry cannot say he committed a trespass in entering. A man who sells the goods of another as agent for the owner cannot prevent the owner adopting the sale, and deny that he acted as agent for the owner. It runs throughout our law, and we are familiar with numerous instances in the law of real property. A man who grants a lease believing he has sufficient estate to grant it, although it turns out that he has not, but has a power which enables him to grant it, is not allowed to say he did not grant it under the power. Wherever it can be done rightfully, he is not allowed

to say, against the person entitled to the property or the right, that he has done it wrongfully. That is the universal law.

"When we come to apply that principle to the case of a trustee who has blended trust moneys with his own, it seems to me perfectly plain that he cannot be heard to say that he took away the trust money when he had a right to take away his own money".

■ That the parties intended to treat the deposit as a deposit of money and that effect should be given to that intention and a deposit so treated we think is clear. As was said by Mr. Justice McBride in *Lane v. First National Bank,* supra:

"From the time they accepted the check until and including the time the bank closed its doors, there was enough money in its vaults, or in cash balance in other banks, to have covered the amount due Lane, and cash balances in other banks are for the purpose of this case the same as if the money had been in the vaults of the bank. There is no rule of law that requires a bank to keep all its money in its own safe. In fact, few banks in country towns do so, but from motive of safety or convenience prefer to have it kept in the vaults of the banks of larger commercial centers. It could call in its balances and keep its moneys in the unused hose of the president or the cashier, or bury them, if it saw fit, but for the purposes of this or any like case these balances should be treated as in its possession and were available for a basis of a draft in favor of Lane. But it is said that the fact that the payment by Arden A. Reed was by check defeats the trust; that such payment did not 'swell the assets of the bank' as a payment as cash would have done. The phrase, 'swell the assets of the bank,' is a glib phrase, which is frequently parroted down from one court to the other, but has no application here. The bank was not acting primarily for him but for Lane for whom it was collecting the money. It took Reed's check as money and thereby diminished its debt to Reed by just that much. It was a good check

and answered the bank's purpose and Reed's purpose just as well as that many actual dollars would have done. Suppose that instead of crediting Reed's note with the amount of the check the cashier had said, 'Mr. Reed, we must have actual cash in payment of this note, just step to the paying teller's window and cash your check,' and Reed had done this and at once returned to the cashier's window and paid the money on the note, every condition required by those decisions which put so much significance to the phrase 'swell the assets' would have been complied with and yet the result would have been the same''.

In *Schumacher v. Harriett,* supra, the transaction was similar to the one involved here. In that case Mrs. Harriett had deposited in a bank two checks which had been drawn payable to her order by two insurance companies and these checks had been forwarded to two correspondent banks for credit to the account of the forwarding bank and later applied as debits in settlement of said accounts. It was contended that the forwarding bank's assets had not been augumented by the deposit of these two checks and, therefore, Mrs. Harriett was not entitled to a preference or charge upon the funds of the forwarding bank in the hands of its receiver. In disposing of this contention, the court said:

"Under modern banking conditions, the rule as stated should be held to apply to cash items received by a bank under a trust agreement as well as to cash so received. Such an item for all practical purposes differs not at all from currency. It increases the cash funds of the bank just as much as does a deposit of currency. If the bank cashes it and covers the proceeds into its vaults, the augmentation, of course, is apparent. If, however, the bank treats the cash item as its own and uses it for other banking purposes, such as payment of debts or creating credits in other banks, the cash in the vaults of the banks is relieved to that

extent; and, where a trust with respect to a cash item is involved, it must be presumed that the intention was that cash remaining in the vaults of the bank is to be substituted under the trust. There is no more reason, in such case, for refusing to declare a trust on the funds remaining than there would be to refuse to do so because the bank had paid out the identical currency which the cestui que trust had placed in its possession. In other words, we think that a cash item, which is accepted by a bank as cash and fulfills for it the functions of cash, must be treated as cash in determining whether the cash remaining in the bank is subject to a trust because of the commingling of trust funds.

''The fact that the bank might have charged back the checks against the account of complainant if they had been dishonored, or that until collection complainant might have treated the bank as an agent for collection (St. Louis, etc., R. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683), does not militate against this conclusion. The fact of importance is that the bank treated the checks as its own and did not have occasion to charge them back. Even if considered an agent for collection, it appropriated the checks to its own use; and the benefit to its cash assets accrued at the time when it received them. It took them as cash and gave complainant immediate credit for them on her account and asserted ownership of them thereafter. See City of Douglas v. Federal Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051. While complainant might have asserted ownership thereafter and claimed the checks or their proceeds, the bank by its action is clearly estopped from denying that it acquired title to them at the time of their transfer, and that they became a part of its cash assets at that time.

'' And, even if we follow the checks into the accounts of the New York and Richmond banks, we do not think that the position of the receiver is helped. As so deposited, they unquestionably augmented the available assets of the bank, for it appears that on the day the checks were received and for a number of days thereafter, the amount to the credit of the failed bank in

these accounts was largely in excess of the checks deposited. The checks, therefore, even if traced into these accounts, were used to increase the assets of the bank and not merely to extinguish its liabilities. These credits in correspondent banks, together with the cash and cash items in the vaults of the banks, constituted its immediately available assets; and a use of one of them for the purposes of business relieved to that extent the use of the others. All were equally under the control of the bank; and if one was exhausted, there is every reason for holding that the others were subjected to the trust, on the principle of the commingling of trust funds, that there is for holding that the remaining currency is subject to the trust, although the identical currency which the cestui que trust deposited may have been paid out. In the complexities of modern banking, cash, cash items, and credit balances react upon each other so rapidly that in ordinary cases it is vain to attempt to distinguish between them. If a cash item has augmented any of them, it must be regarded as having augmented the cash assets of the bank; and, on the principle that the bank is presumed to have respected the trust funds and held them sacred, any cash assets passing into the hands of the receiver must upon the principles and subject to the limitations above stated, be held subject to the trust. There is as little reason for distinguishing between cash, cash items, and deposits in other banks in the application of the equitable doctrine, as there would be in distinguishing between moneys kept in different vaults of the same bank. The fact that the accounts in the Richmond and New York banks were subsequently exhausted has, therefore, no bearing upon the question involved''.

In *Reichert v. United Savings Bank,* 255 Mich. 685 (239 N. W. 393, 82 A. L. R. 33), the defendant bank at the time it passed into the hands of the receiver had cash in its vaults of about $9,000, which was much less than the funds which were involved in the suit, but it had on deposit in solvent correspondent banks

a much greater sum and more than the amount of the trust funds. The receiver contended that the trust claimants were entitled to a preference only to the cash actually in the vaults of the bank at the time the receiver took possession. After showing that the deposit of these trust funds swelled the assets which came into the possession of the receiver and that the total of the bank's cash on hand and in its deposits in correspondent banks had never been less than the amount of the trust funds, the court said:

"Therefore we think it should be held that the cash on deposit in the correspondent banks should be considered the same as cash in defendant's vaults. If an action of this character were prosecuted against an individual, he would not be heard to say that the plaintiff's funds held in trust by him could not be traced or found in his possession simply because he had them deposited in his bank account. We know of no reason for applying a different test or coming to a different conclusion as to money of an insolvent bank on deposit in a correspondent bank. * * *

"There is a conflict of authority as to whether preferred claims are payable only out of cash actually in the insolvent bank at the time it suspended or whether its cash deposits in other banks can also be reached. As above indicated, we think it is of no consequence whether the insolvent bank is holding the money in its own vaults or has it on deposit in other banks".

In support of its holding the court cited *Yellowstone County v. First Trust & Savings Bank,* 46 Mont. 439 (128 P. 596) ; *People v. Auburn State Bank,* 215 Ill. App. 133; *People v. Iuka State Bank,* 229 Ill. App. 4. Other cases holding that trust funds which have been commingled by the bank with its general funds may be followed by virtue of the presumption that payments made by the bank subsequent to the deposit of trust funds will be presumed to have been paid only from the

funds of the insolvent bank itself are *Myers v. Federal Reserve Bank,* 101 Fla. 407 (134 So. 600) ; *City Bank v. Hart,* 102 Fla. 529 (136 So. 446) ; *Federal Reserve Bank v. Quigley,* (Mo.) 284 S. W. 164; *Blythe v. Kujawa,* 175 Minn. 88 (220 N. W. 168, 60 A. L. R. 330), and other cases cited in 82 A. L. R., p. 191, et seq., to which we have referred. Referring to the case of *Blythe v. Kujawa,* supra, the annotator says:

"And where it was shown that such a trust fund actually came into the hands of the bank, and became a part of the cash assets of the bank, the beneficial owner was held entitled to follow the same into the cash coming into the hands of the bank's receiver, where it was shown that the bank at all times had on hand, and turned over to its receiver, cash in excess of the amount of the trust fund, and it was held to be immaterial that the check representing the trust fund was sent by the bank to its correspondent in another city for collection and credit, and was there credited to the trustee bank, and that thereafter all of the latter bank's deposit in the correspondent bank was dissipated in the payment of its debts. Blythe v. Kujawa, (1928) 175 Minn. 88, 60 A. L. R. 330, 220 N. W. 168 (later appeal in 1929, 177 Minn. 79, 224 N. W. 464). The court stated: 'The offers concede that the local bank received full credit for the check, and it thereby immediately became a part of its assets. Whether the bank thereafter paid out obligations direct over its counter at home or through its Chicago correspondent would not seem important. Whether a man uses his left or his right hand in paying an obligation does not matter. We are unable to make any distinction between the cash funds kept by this bank in its own vault and in the vault of its Chicago correspondent. The money in either place was a part of the cash holdings of the bank as a whole. And, having at all times since the receipt of this fund had on hand and turned over to the receiver cash more than sufficient to pay this trust fund, neither the receiver nor the general creditors have cause for complaint' ".

While we are aware that the conclusion we have reached in this case is at variance with the decisions of many courts of high standing and possibly is not in entire accord with some of the earlier decisions of this court, we think it does conform to our own decision in *Lane v. First National Bank,* supra, and is the rule of decision which ought to be adopted in this state where the facts are the same as those involved here. The funds in question were public moneys belonging to a school district and were deposited in a bank known by its officers to be insolvent at the time the deposit was received. When so received and continuously thereafter up to the time the superintendent of banks took charge, the insolvent bank had more cash on hand in its own vaults than the amount of the trust fund. When the deposit was made the assets of the bank were augmented. The check was treated as money and forwarded as so much money to a correspondent bank which credited the insolvent bank with the amount of the check. The acceptance of the check for the purposes of deposit was, of course, wrongful, the bank at the time being insolvent, and, unless the insolvent bank intended when it deposited this check with the Ladd & Bush Bank for credit on its account to substitute an equal amount of the cash it had on hand in its own vaults, as it had the power and was its duty to do, that action was also wrongful. The presumption is that the bank intended to act honestly and did not intend to wrongfully convert these funds. If, however, it intended to act dishonestly and not to hold the trust funds sacred, then, since it had the power to act honestly in the premises and failed to do so, the law will not permit the bank or its statutory liquidator, the Superintendent of Banks, to assert that it acted dishonestly and not in the manner it had the right to do.

For these reasons, the decree of the lower court must be reversed and a decree will be here entered holding that the plaintiff district is entitled to a preference and charge upon the funds in the hands of the Superintendent of Banks for the amount of the trust fund and directing him to pay over to the district the amount of said deposit, and it is so ordered.

BELT, KELLY and ROSSMAN, JJ., concur.