[No. 25124.   Department Two.   September 22, 1934.]

BIG WEST OIL COMPANY, *Appellant*, v. C. S. MOODY,
*as State Supervisor of Banking, Respondent.*[1]

*John E. Orr* and *Graves, Kizer & Graves,* for appellant.

*Dillard & Powell, Robertson & Smith,* and *Hart Snyder,* for respondent.

BLAKE, J.—The American Bank of Spokane, being insolvent, passed into the hands of the supervisor of banking for liquidation on April 14, 1932. Plaintiff brought this action against the supervisor to establish a preferred claim in the assets of the bank to the extent of five thousand dollars. After trial, the lower court entered judgment dismissing the action. Plaintiff appeals.

The facts giving rise to the controversy are undisputed, but quite ˙intricate. For some time prior to November, 1931, appellant was a customer of the bank, and carried substantial balances on general deposit.

[1]Reported in 35 P. (2d) 1093.

In the month mentioned, appellant had fifty thousand dollars on deposit in a bank in the province of Alberta, Canada. Desiring to bring thirty thousand dollars of such funds into the United States, its officers took up the matter of transfer with officers of the bank, to the end that the transfer might be accomplished with a minimum loss on account of the difference in value of Canadian and United States dollars. At that time, the rate of exchange was fluctuating from twelve to fifteen per cent, or more, to the disadvantage of the Canadian dollar. It so happened that the bank then had on deposit twenty thousand dollars in Canadian banks, which it wished to bring into the United States.

November 23, 1931, the bank, acting for itself and the appellant, caused fifty thousand dollars to be transferred from Canadian banks to the branch of the Canadian Bank of Commerce in Seattle. The rate of discount was twelve per cent, so that the net result was that appellant and the American Bank were out six thousand dollars on the transaction. In order to recoup this loss in exchange, the American Bank, acting for itself and appellant, took, through the Seattle branch of the Canadian Bank of Commerce, a ninety day option to purchase fifty thousand Canadian dollars.

In February, 1932, just before this option expired, appellant wished to transfer an additional twenty thousand dollars from Canada to the United States. The American Bank had an additional ten thousand dollars which it desired to transfer. The thirty thousand dollars was transferred through the Canadian Bank of Commerce to its Seattle branch, at a loss of $3,618.75, on account of discount rate of twelve and one-sixteenth per cent, then prevailing. This left twenty-six thousand three hundred eighty-one and 25/100 United States dollars, two-thirds of which be-

longed to the appellant, and one-third to the American Bank.

The option taken in November was closed out. A new option, however, was taken through the Seattle branch of the Canadian Bank of Commerce by the American Bank for itself and appellant to purchase eighty thousand Canadian dollars at any time in March, April and May, 1932. The purpose of taking this option was to be in a position to take advantage of any reduction that might occur in the rate of discount on Canadian dollars, and thus reduce the loss sustained by the transfer of the fifty thousand dollars made in November, as well as the loss sustained on the transfer of the thirty thousand dollars in February.

In order to hold this option, it was necessary to keep eight thousand dollars on deposit with the Seattle branch of the Canadian Bank of Commerce. This deposit was arranged for in the following manner: When the last option was taken, there was found to be, on the adjustment of the rate of exchange, a slight balance in favor of the American Bank on the November transaction, so that there was, as a result of both the November and February transactions, a balance of $26,931.25 due the American Bank from the Canadian Bank of Commerce. At the direction of the American Bank, the Canadian Bank of Commerce deposited $18,931.25 to the account of the former in the First National Bank of Seattle, the Canadian Bank of Commerce retaining eight thousand dollars as a deposit on the option taken by the American Bank to purchase eighty thousand Canadian dollars.

At this point in the proceedings, it is clear that five thousand dollars of this eight thousand dollars was money belonging to appellant. And, as we read the complaint, it was upon this theory that appellant

predicated its action. But what transpired subsequent to the deposit of the $18,931.25 in the First National Bank makes that position untenable. When that amount was placed to its credit in the First National Bank, the American Bank credited appellant's checking account with it (American Bank) in the sum of $17,931.25. This was the full amount to which appellant was entitled from the proceeds of the transfer of Canadian funds into United States funds. At the time of crediting appellant's checking account in this amount, the American Bank wrote appellant a letter in which the transaction was summarized, and appellant was advised as follows:

"As you know, it was necessary for us to deposit with them for your account $5,000 to protect them against fluctuation in rate and it is our understanding that you will maintain this balance on your account during the period this option is in force."

Appellant thereupon entered the deposit on its own books. By accepting this credit, we think it is clear that appellant thereby lost all right, title and interest in the eight thousand dollars left on deposit with the Canadian Bank of Commerce.

When advised that the deposit of $17,931.25 had been made, appellant made a charge on its own books against its checking account in the sum of five thousand dollars. Appellant contends that this act on its part, coupled with the request contained in the bank's letter above quoted, transformed five thousand dollars of funds in its checking account into a special deposit.

We cannot agree that the relationship of creditor and debtor between the bank and appellant was thereby changed into that of trustee and *cestui qui trust*. Of the numerous cases cited by appellant, we find none where so intangible a manifestation of intent to create a special deposit has been held sufficient to

accomplish the purpose. Had appellant drawn a check for five thousand dollars, and deposited it with the bank for the purpose of covering its share of the margin on the option, we should have an entirely different situation. Under the authorities, such a procedure would accomplish the intention to create a special deposit. *Northwest Lumber Co. v. Scandinavian American Bank,* 130 Wash. 33, 225 Pac. 825, 39 A. L. R. 45; *Bryan v. Coconut Grove Bank & Trust Co.,* 101 Fla. 947, 132 So. 481, 134 So. 229; *People v. City Bank of Rochester,* 96 N. Y. 32.

In other words, there must be some act, at least on the part of the depositor, tending to segregate the funds in possession of the bank for a particular purpose. *Blythe v. Kujawa,* 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330; *Davis v. McNair,* 48 Fed. (2d) 494; *State v. Grills,* 35 R. I. 70, 85 Atl. 281; *Brashear v. Perry Bank & Trust Co.,* 252 Ky. 297, 67 S. W. (2d) 28. In the case last cited, it is said:

"The deposit in the instant case does not fall within that class of deposits in which a trust relationship arises, since it was clearly contemplated that the bank would use the deposit in its general banking business as it used other general deposits. If the plaintiff had withdrawn $1,000 of his deposit, and had then delivered the money to the bank under a specific agreement that the money was to be held as a special fund for the sole purpose of indemnifying L. F. Brashear, it might be plausibly argued that such a procedure afforded a basis for an inference that plaintiff had sought to establish a trust fund, but, in view of the procedure adopted, there was clearly no intended alteration of the debtor and creditor relationship theretofore existing."

It was not sufficient that appellant charged itself with five thousand dollars to cover the advance made for it by the bank. To create a special deposit, it was

necessary to charge its account in the hands of the bank with that amount for that specific purpose.

The fact that the bank expressed the understanding that appellant would maintain a deposit of at least five thousand dollars during the period of the option, lends no aid in creating a special deposit. The fund remained a part of appellant's general deposit, and was subject to checks drawn upon it, and subject to use by the bank as any other general deposit. *Cunningham v. Merchants' National Bank,* 4 Fed. (2d) 25, 41 A. L. R. 529; *Brashear v. Perry Bank & Trust Co., supra.* Speaking to this point in the *Brashear* case, the court said:

"It is not alleged in the petition that $1,000 in specie was withdrawn and set apart to be held by the bank to indemnify L. F. Brashear against loss, and that, in the event he was required to pay the amount of the bond, the specific money so held should be delivered to him. The most that can be gathered from the petition is that plaintiff agreed to leave on deposit in the bank at least $1,000 until L. F. Brashear had been released from all liability on the Campbell bond. The character of the deposit was not changed. The $1,000 covered by the agreement remained a part of plaintiff's general deposit, and could be used by the bank in its banking business just as it used other general deposits. The relationship of the plaintiff and the bank as to this fund was that of creditor and debtor and not that of bailor and bailee. It continued to be a part of the fund for which the bank had theretofore issued to the plaintiff time deposit certificates. The only restriction placed on the deposit by the agreement was that $1,000 of plaintiff's general deposit could not be withdrawn by him until the happening of certain contingencies."

The judgment is affirmed.

BEALS, C. J., TOLMAN, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent. The five thousand dollars was a fund required by the bank to be

maintained by appellant to that amount. Appellant could not withdraw it nor the bank use it in its general banking business without replacing it. It was a guaranty fund for a specific purpose, which made it a special deposit regardless of the entries of the bookkeepers of both parties.